(159 App. Div. 186.)

L. BLACK CO. v. LONDON GUARANTEE & ACCIDENT CO., Limited.

(Supreme Court, Appellate Division, Fourth Department. November 19, 1913.)

1. INSURANCE (§ 665*)—CREDIT INSURANCE—BREACH OF WARRANTY—SUFFI-CIENCY OF EVIDENCE.

Evidence, in an action on a policy of credit insurance, wherein the defense was that a false statement was made in the application, as to losses previously incurred, *held* not to show that insured knew, prior to making the application, that a debtor who had made an assignment to him for the benefit of creditors would not be able to pay his creditors in full.

[Ed. Note.—For other cases, see Insurance, Cent. Dig. §§ 1555, 1707–1728; Dec. Dig. § 665.*]

2. APPEAL AND ERROR (§ 927*)—FINDINGS—PRESUMPTION.

Where, in an action on a credit insurance policy, both parties move for a directed verdict at the close of the evidence, and the court directs a verdict for plaintiff, it will be presumed on appeal that the court found that plaintiff had no notice, at the time of making his application, of a probable loss not mentioned in the application, where such finding is necessary to support the directed verdict.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 2912, 2917, 3748, 3758, 4024; Dec. Dig. § 927.*]

3. INSURANCE (§ 646*)—CREDIT INSURANCE—BURDEN OF PROOF—"LOSS"—"IN-SOLVENCY."

A credit insurance policy insuring "against actual loss, such loss to occur through the insolvency of debtors as herein defined," made a part of its terms the application, which provided that any material misstatements or omissions should avoid the policy and stated the losses for a preceding period. The policy also defined insolvency as "the making of an assignment or deed of trust by a debtor for the benefit of creditors" and provided for the adjustment of partial losses. *Held*, that the word "losses" as used in the application, was not equivalent to "insolvency"; and hence, in an action on the policy wherein the defense was a breach of warranty, the burden was on defendant to establish, not only the insolvency of a debtor not mentioned in the application, but to prove that

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

plaintiff at the time of making the application knew that he would ulti-mately suffer a loss upon such debtor's account.

[Ed. Note.—For other cases, see Insurance, Cent. Dig. §§ 1555, 1645–1668; Dec. Dig. § 646.*

For other definitions, see Words and Phrases, vol. 5, pp. 4232–4237; vol. 4, pp. 3647–3655; vol. 8, p. 7687.]

4. INSURANCE (§ 151*)—CREDIT INSURANCE—APPLICATION—CONSTRUCTION.

Where an application for credit insurance did not in terms refer to the policy, the policy could not be looked to in construing the application, since, while a warranty must be strictly true, its scope will not be extended beyond the fair import of its language.

[Ed. Note.—For other cases, see Insurance, Cent. Dig. §§ 308–311; Dec. Dig. § 151.*]

5. INSURANCE (§ 389*)—APPLICATION—SUFFICIENCY—DEFENSE.

Where an application for credit insurance, made on forms prepared by the insurer, requires the applicant to state its losses during specified periods, and the statement made is incomplete or ambiguous, and the insurer issues the policy without demanding fuller information, such defects in the application will not be available as a defense to a subsequent action on the policy.

[Ed. Note.—For other cases, see Insurance, Cent. Dig. §§ 1028–1031; Dec. Dig. § 389.*]

6. INSURANCE (§ 146*)—APPLICATION—CONSTRUCTION.

To avoid a forfeiture of insurance, equivocal answers in the insured's application will be construed most strongly against the insurer.

[Ed. Note.—For other cases, see Insurance, Cent. Dig. §§ 292, 294–298; Dec. Dig. § 146.*]

7. INSURANCE (§ 284*)—CREDIT INSURANCE—APPLICATION—SUFFICIENCY.

Where a printed statement in an application for credit insurance, stating that the applicant knew nothing detrimental to the credit of any customer "which would affect his policy except as follows," was stricken from the application before it was signed, the insured could presume that no information was required as to doubtful accounts; and hence his failure to give such information did not invalidate the policy.

[Ed. Note.—For other cases, see Insurance, Dec. Dig. § 284.*]

Merrell, J., dissenting.

Appeal from Trial Term, Monroe County.

Action by the L. Black Company against the London Guarantee & Accident Company, Limited. From judgment for plaintiff and denial of new trial, defendant appeals. Affirmed.

Argued before KRUSE, P. J., and ROBSON, FOOTE, LAMBERT, and MERRELL, JJ.

Louis L. Waters and King, Waters & Page, all of Syracuse, for appellant.

Hiram R. Wood and Werner & Harris, all of Rochester, for respondent.

ROBSON, J. The cause of action upon which plaintiff had its judgment is founded upon a contract of credit insurance, made by the defendant, as insurer, with plaintiff, as the insured. The policy of insurance issued by defendant to plaintiff is set forth in full in the plaintiff's complaint, and its issuance to plaintiff by defendant substantially in the form set out in the complaint is admitted by defendant

in its answer. The principal defense interposed was the affirmative one of an alleged breach of warranty on the part of plaintiff by reason of a statement, contained in plaintiff's application for the policy of the amount of losses sustained by it from July 1, 1909, to June 16, 1910, the date of the application, which statement defendant alleged was false in that plaintiff's losses during that period were much greater than plaintiff stated them to have been.

The policy issued upon plaintiff's application provides that the defendant will insure plaintiff during the period specified therein "against actual loss, * * * such loss to occur through the insolvency of debtors as herein defined." A copy of the application was in terms made part of the policy, which also contains the following provision:

"Consideration: The statements and warranties made in the application of the insured are the basis of, and are a part of, this policy. Any material misstatements therein, or omissions therefrom, * * * shall void this policy and the premium paid shall be forfeited."

The application itself was in the form of separately numbered statements, the truth of only one of which is questioned. It appears, so far as material, as follows in the application:

"As a basis of this policy and of any renewal thereof or of any new policy the undersigned warrants the following statement of sales, losses, etc., to be true: (9) Our gross sales and losses after deducting actual recoveries from debtors and our collections on credit insurance have been each year during the past five years as follows:

For the Year Ending

| Term. | Gross Sales. | Losses. | Collected on Credit Insurance. |
|---|---|---|---|
| * * * | * * * | * * * | * * * * |
| July 1st, '09 to June 30th, '10. | 1910 about $630,000.00. | $8,959.05 from July 1st, 1909, to date, showing amount owing as accounts stand to-day." | |

[1] On the trial defendant sought to establish its affirmative defense of breach of warranty by showing that the statement of the amount of plaintiff's losses during the period from July 1, 1909, to June 16, 1910, was false in that a claim in its favor against F. W. Edwards, one of its customers, for the sum of $9,667.63 should have been included in its statement of losses and added to the amount of losses set forth in the above statement; it being claimed that Edwards was then insolvent to the knowledge of plaintiff. It appeared that Edwards, who was then owing plaintiff upwards of $10,000 on January 3, 1909, made a deed of trust to plaintiff, which was accepted by it, by which he transferred property to it for the purpose of converting it into money and, after deduction of expenses, exemptions, etc., distributing the proceeds thereof to such of the creditors of Edwards, including plaintiff, as should become parties to the trust agreement and agree to discharge the said Edwards from all indebtedness to them, whether the payment made should be in full or in part of such indebtedness; the surplus, if any, after such payments to be returned to Edwards. The property transferred by the trust deed is thus described therein:

"All of the singular (sic) and goods, chattels, effects, claims demands, and bills receivable, including books of account, and other evidences of indebtedness, together with all collateral belonging or pertaining thereto, owned by the said party of the first part (Edwards) or in which said party of the first part has any interest, marked Exhibit A, hereto annexed and made a part hereof."

It may be observed that it does not appear either in the deed of trust or by direct evidence that at the time the deed of trust was given all of the property of Edwards was thereby transferred to plaintiff, or that plaintiff knew prior to making its application to defendant for insurance that Edwards' creditors would not be paid in full. Indeed, there is direct evidence that notification of the fact that there might be a loss on the Edwards' account was not received by plaintiff until some days after the application was made.

[2] If it was a question of fact in the case whether plaintiff had notice of a probable loss on the Edwards' account prior to making its application for this insurance, the evidence would support a finding, which, if necessary to support the direction of a verdict, the court must be presumed to have made, both parties having moved for a directed verdict, that such notice had not been received.

[3] Appellant, however, claims that the meaning of the word "losses," as used in the application, is defined by the contract itself, and points to a provision of the policy defining "insolvency" as the agreed equivalent for the term "loss" as used in the contract of insurance. So far as material it is as follows:

"Definition of Insolvency: For the purposes of this policy any one of the following occurrences shall constitute the insolvency of a debtor: * * * (11) The making of an assignment or deed of trust by a debtor for the benefit of creditors either general or with preferences."

But while the making of such an assignment or deed of trust by a debtor may be prima facie evidence of a loss to the insured covered by the policy, if otherwise within its terms, yet it is clear that the fact of insolvency alone is not conclusive as to the extent of the loss of insured which the policy covers, as appears by another provision of the policy entitled "adjustment," wherein it is stated that:

"From each covered gross loss there shall be deducted in whole or pro rata, as the indebtedness is covered in whole or in part, all amounts collected or made secure, whether as payments, dividends, goods returned or replevied (when such replevied goods are in the undisputed possession of the insured) or otherwise realized," etc.

It is apparent that it is the loss, adjusted as the policy provides, that the defendant thereby insured plaintiff against, for the policy provides for insurance only as "against actual loss, * * * such loss to occur through the insolvency of debtors as herein defined * * * and to be proven under the terms, conditions and limitations of this policy." Even in the policy itself, therefore, the term "loss" is not the equivalent of, nor is it fixed in amount by, the actual indebtedness of a debtor of the insured at the time the insolvency occurs. The word "loss," therefore, within the terms of the policy itself, would seem to mean the net loss due to insolvency of the debtor after application on the claim of such salvage as had been made thereon up to

the date of adjustment of loss. In this view of the meaning of the word "loss," as used in the application, it would be incumbent upon defendant, in establishing its defense of breach of warranty, to show that plaintiff should have known that there would probably be an ultimate loss upon the Edwards account at the time of making its application for insurance.

[4] But, even conceding that an insolvency of a debtor is synonymous with a loss covered by the policy as the words are used therein, it by no means follows that the word "losses" has anything more than its usual meaning as it is used in the application for insurance. There is no reference in the application to the definition of losses or insolvency as they are contained in the policy itself. While the policy refers to the application as a part of it, the application does not in terms refer to the form of the policy to be issued for an explanation or definition of its terms. Applying the usual rules for the interpretation and construction of such contracts, it would appear that the amount of losses, which plaintiff was required to state, were those which it had actually to its knowledge sustained during the specified periods. Of course plaintiff warranted the truth of the statement made. But, while a warranty must be strictly true, its scope will not be extended beyond the fair import of its language. Higgins v. Phœnix Mutual Life Ins. Co., 74 N. Y. 6; Dineen v. General Accident Ins. Co., 126 App. Div. 167, 110 N. Y. Supp. 344.

[5] The form of the statements in the application was prepared by the defendant to be filled out by the applicant. In filling out this form plaintiff was required to state its losses during specified periods. The statement, which it is claimed was false, is, as above stated, that its losses were "$8,959.05 from July 1st, 1909, to date, showing amount owing as accounts stand to-day." This statement of losses as being a certain amount, limited as the statement of amount of losses is by the clause "showing amount owing as accounts stand to-day," is perhaps not entirely clear in its expression of the meaning of the applicant. It might well be held to express the idea that it was a statement of losses as the accounts of customers appeared on the plaintiff's books in which it had entered as losses such accounts of customers as it had knowledge at the time were or would be uncollectible. As stated above, plaintiff did not receive information of a probable loss on the Edwards account until several days after the application for insurance was made. Plaintiff might well be excused from considering or treating this account, as it stood at the time of making the application, as a loss. If the statement it made as to its losses is to be treated as incomplete or ambiguous in its terms, then, if defendant was not satisfied with it, fuller information should have been required. The law applicable to such a situation is well stated in Richards on Insurance Law (3d Ed.) § 113:

[6] "Questions unanswered or partially answered. If a question in the application is not answered at all, or if the answer is not false in any respect but upon its face is only incomplete, there is no breach of warranty, provided the insurer accepts the application without objection, since, if not satisfied, the company should demand fuller information. So also, to avoid forfeiture, equivocal answers are construed most strongly against the company, but, not-

withstanding this, the applicant must answer in good faith and not attempt to evade, conceal, or mislead."

In support of the judgment we may assume that the court found that this statement was made by plaintiff in good faith and without attempt to evade, conceal, or mislead. There is no evidence of any such purpose; nor can any such inference be properly drawn. That the form of application was prepared by defendant with a view of differentiating the required statement of actual losses incurred by the applicant from probable losses from doubtful accounts appears in the form itself.

[7] One of the ·separate statements appearing in its printed form of application is as follows:

"(6) We do not know of anything detrimental to the credit or standing of any customer or prospective customer, which would affect this policy, except as follows:"

This statement was stricken from the application before it was signed by plaintiff. Not having been required to make any statement on this subject, plaintiff might well have inferred that no information as to doubtful accounts was required. In view of the admissions in defendant's answer and its concessions of fact made at the trial, it does not seem necessary to discuss the other assignments of error which are urged on this appeal.

The judgment and order should be affirmed, with costs. All concur, except FOOTE, J., not voting, and MERRELL, J., who dissents.

MERRELL, J. Fair dealing should have prompted the applicant for credit insurance to disclose, not conceal, the fact that it held the deed of trust from its customer, which under the terms of the policy then before the parties was defined as constituting insolvency. Failure to do so was not, I think, inadvertent and constituted such a breach of warranty as should preclude any recovery by plaintiff.