JAMES V. P. OGLESBY, Respondent, *v.* MASSACHUSETTS ACCIDENT COMPANY, Appellant. (Action No. 1.)

JAMES V. P. OGLESBY, Respondent, *v.* MASSACHUSETTS ACCIDENT COMPANY, Appellant. (Action No. 2.)

Second Department, September 29, 1930.

362

*Frederick N. Van Zandt* [*Edmund I. Read* and *R. A. Mansfield Hobbs* with him on the brief], for the appellant.

*William A. Wight,* for the respondent.

YOUNG, J. This litigation has been in the courts since 1922. Each of the above actions was brought upon the same policy of insurance issued by the defendant to the plaintiff which provided for the payment to the plaintiff of fifty dollars per week in case of disability resulting from bodily injuries or disease preventing him from performing any and every kind of duty pertaining to his occupation or business. Plaintiff is a physician. The policy sued upon was issued on June 15, 1920, and plaintiff claimed disability from disease in September, 1922. Action No. 1 was begun on December 22, 1922, in which plaintiff demanded judgment for the sum of five hundred and fifty dollars, same being weekly indemnity

of fifty dollars from the time of his disability to the commencement of said action.

On July 25, 1925, action No. 2 was brought to recover the amount of weekly indemnity of fifty dollars per week from the time covered by action No. 1. The defenses interposed in each action were that the policy was secured by fraud, false representations and warranties, and, in particular, that the plaintiff, in his written application, had falsely stated that he was not then nor had he ever suffered from syphilis.

Action No. 1 was tried in 1923 and resulted in a verdict for the plaintiff. On January 22, 1926, this court reversed this judgment on the ground that the finding of the jury that the plaintiff was not suffering from syphilis on June 15, 1920, when he applied for the insurance in question, was contrary to the evidence. (215 App. Div. 839.)

In October, 1926, both actions were tried together, and resulted in a verdict in favor of the defendant, the jury having answered specific questions to the effect that plaintiff was suffering from syphilis at the time he applied for the insurance in question. Upon appeal, on April 12, 1929, this court reversed the judgments entered in favor of the defendant as a result of this trial, stating that the reversal was in the interests of justice because the question as to whether the defendant had not waived the defense of fraud was not submitted to the jury. (226 App. Div. 758.)

Thereafter, on December 10 and 11, 1929, both actions were again brought on for trial and resulted in verdicts in favor of the plaintiff for the full amount claimed in each action, and the defendant now appeals from the judgments entered upon said verdicts.

The trial justice allowed the jury to render a general verdict and also submitted the following specific question for the jury to answer, to wit: " Did the plaintiff, on September 18, 1922, suffer a disability from disease so that since that date he has been continuously prevented thereby from engaging in any and every kind of duty pertaining to his occupation or business? "

The jury answered this question in the affirmative and found a general verdict in favor of the plaintiff in action No. 1 for $780, and in action No. 2 for $22,943.

There is ample evidence in the record to support the finding of the jury that the plaintiff was totally disabled on September 18, 1922, within the meaning of the policy sued upon. The appellant does not question this.

The first point made by the appellant is that the plaintiff made false representations in his application for insurance in stating that he was not suffering from syphilis at the time of the application and

that he had never suffered from that disease, which preclude any recovery by him in these actions and that the court should have dismissed the complaints on this ground.

Upon this point, I think it is sufficient to call attention to the fact that this court reversed the judgment obtained in the first cause of action because the finding of the jury to the effect that plaintiff was not suffering from syphilis at the time of the application for insurance was against the weight of the evidence, and the present record is much stronger against the plaintiff on this question than was the record upon the former trial. Plaintiff claimed disability on September 18, 1922, at which time it is conceded that he was suffering from locomotor ataxia. Plaintiff admits that, as far back as 1906, he believed he was suffering from syphilis which he contracted while treating a patient. Doctor MacPhee, who testified for the plaintiff at the first trial and was called by the defendant upon this trial, testified that the cause of plaintiff's locomotor ataxia was syphilis, and Doctors Townsend and Morton, defendant's experts, testified that the only cause of locomotor ataxia is syphilis.

It is apparent, therefore, that these judgments should be reversed upon this ground, were it not for the very important issue of waiver presented by the record. In this connection, it will be recalled that this court reversed judgments in these cases in 1929 because this question of waiver which we deemed most important was not presented to the jury.

The trial justice presented this issue upon the present trial in the following language: " The counsel have argued to you about waiver. I don't know how much the average juror knows about the legal doctrine of waiver. I am going to try to make it clear to you, if I can, and I am not sure that I will be successful. Take this case, for instance, that the parties made a contract. One party said that that contract was void because of a false statement or misrepresentation. It would be true that if there was a false statement or representation, the contract was at an end, it was no good the moment that the party who had been defrauded by it asserted his rights. The contract was not like many contracts of insurance that the insurance company may cancel if it wants to without giving any reason. They often have those provisions in their policies, that an insurance policy can be cancelled by the company any minute and without giving a reason at all. This was not one of that kind. This policy permitted the plaintiff to renew it from year to year, and as long as he paid the premium, the policy was not cancellable at the wish of the insurance company without reason. But any contract induced by fraud or deceit or by misrepresentation

may be cancelled at any time, and the courts will cancel the contract, if an action is brought to set aside a contract or rescind it on the ground of fraud or misrepresentation. The courts have power to set aside the contract, so just as soon as the defendant discovered, during these years, that it had been imposed upon, it could either have said, ' We will not renew the contract any more ' or it could have brought an action to rescind it and the contract would have been at an end. But the law of waiver, in substance, is this, that if a man knows of a wrong or a fraud, and he has received a benefit under the contract that was induced by that wrong or fraud, he may take his choice; he may cancel the contract, or he may continue it, and if he continues it, knowing of the fraud, then there is what we call a waiver, and he has closed his own mouth from saying that there is a fraud, after he has received benefits under it, lived under it, ratified it and confirmed it, knowing that it was fraudulent, and the courts will not hear him when he then comes in to say, ' This contract was induced by fraud.'

" The first action on this policy was brought in the latter part of 1922 for a comparatively small sum of weekly payments. The defendant put in an answer to that action along in the latter part of 1922 or the early part of 1923, and set up this fraud, that is misrepresentation, and called it by the shorter term, fraud. Strictly, it is not fraud, but it amounts to that. So it knew then that the answer of the assured to the question was not true, or thought it was not true. We are trying two actions together here, and treating them both as one, as the counsel desire. Then another action was brought later setting up a demand for recovery for a longer period, and again the same answer, in substance, was interposed, and yet the plaintiff renewed his contract each year and paid the premium and the defendant accepted it, as the company by its representative, the counsel here, has very frankly said. Now if the company knew that this man had syphilis and understood that it could cancel the policy, and yet it was receiving the premium after it knew that there had been fraud or false representations or misrepresentations in the application, or a false warranty, then it has adopted the contract as it stood and it has waived its right to assert that defense. So, even if you say that the plaintiff had syphilis when he made the application for the policy, if you find that the defendant, under the rules that I have given you, knowingly proceeded to take premiums thereafter, knowing that there had been misrepresentation, then you may say that it has waived its defense and is standing on the contract as it was written, regardless of that representation or that answer in the application."

This charge was apparently satisfactory to both sides. No

exception was taken to it and the defendant's counsel did not request any further or different charge upon the question of waiver. The defendant conceded at the trial that seven annual renewal premiums were accepted and retained by the defendant, the first one of these having been received on June 15, 1921, and thereafter the renewal premiums were paid by the plaintiff and accepted by the defendant annually. The policy was what is known as a non-cancellable policy, and the plaintiff had the right to renew it annually as long as he wished. The trial justice was of the opinion that, inasmuch as the defendant admitted the receipt and retention of these annual premiums, there was a waiver of the defense of fraud set up by the defendant as a matter of law, but he stated that, in deference to the decision of the Appellate Division, he submitted that question as one of fact and no harm had come of it because the jury's finding coincided with the opinion of the court. Upon this appeal, the chief argument made by the appellant is that there was no waiver of this defense on the part of the defendant. It is contended that, as to action No. 1, there cannot possibly be any waiver on the part of the defendant of this defense; that there is no evidence that the defendant was aware of plaintiff's fraud until he filed his claim of disability in September, 1922. At this time, defendant had received and retained two renewal premiums, one paid June 15, 1921, and the other June 15, 1922, without knowledge or suspicion of any fraud on the part of plaintiff. The first action was commenced on December 22, 1922, and defendant's answer was served February 26, 1923. In this answer the defendant set up, by way of defense, the false statement referred to in the application, having become aware of it first by plaintiff's claim of disability, made in September, 1922. In this action, the plaintiff served a reply on April 26, 1923, claiming estoppel and waiver of this defense. The appellant asserts that there could be no estoppel or waiver at this time by reason of the acceptance of the two renewal premiums mentioned because these premiums had been received by the defendant without knowledge of plaintiff's fraud. There could only be a waiver as to this cause of action if plaintiff proved that these two premium payments had been received with knowledge of the fraud and that plaintiff failed to make any such proof. So far as I can discover, there is no such proof in the record, and this question, now raised by the appellant for the first time on appeal, presents a most interesting situation. It, of course, refers only to action No. 1. Action No. 2 was not commenced until 1925, and the same defenses were interposed by the defendant and a similar reply by the plaintiff, claiming waiver and estoppel, but, of course, as to action No. 2, it is clear that payments of annual

premiums were received and retained by the defendant with knowledge of plaintiff's fraud, so the argument now made as to action No. 1 does not apply to action No. 2. The question presented is this: Conceding that the two payments of renewal premiums made by the plaintiff to the defendant in 1921 and 1922 were accepted and retained by the defendant without any knowledge on its part of plaintiff's fraud, does the fact that defendant thereafter accepted the annual premiums without objection constitute a waiver of the defense of fraud so far as action No. 1 is concerned?

Assuming that action No. 1 was being tried separately, would evidence that the defendant had accepted renewal premiums from 1923 to 1927 be competent evidence in that action to show a waiver on the part of the defendant of the fraud alleged against the plaintiff? It seems to me that such evidence ought to be regarded as proper even in an action at law in a case of this kind, for it certainly shows defendant's attitude towards the policy in suit, but no authority seems to be cited by either side upon this question. However, I think there is another answer upon this point. These cases were tried together by consent of counsel. Upon the trial, plaintiff asked that payments be made to him up to the date of trial and there was no objection to that. The court charged the jury that counsel were willing that, in case plaintiff succeeded, the recovery should be at the rate of fifty dollars per week up to the time of the trial. This question now argued so earnestly by the appellant as to the defense of waiver, so far as action No. 1 is concerned, was never raised at the trial. The charge of the court, which I have set out above, made no distinction between the two actions in this respect. The doctrine of waiver was applied equally to both actions and in the same manner, the court charging that, if the defendant accepted and retained the renewal premiums with knowledge of plaintiff's fraud, such action amounted in law to a waiver of the defense of fraud. Defendant's counsel accepted this charge and made no request for a further charge upon the subject of waiver and did not point out to the court that there could be no waiver in action No. 1 because the two premiums had been received without knowledge of plaintiff's fraud. He acquiesced in the charge as made and I think it became the law of the case and that the appellant is in no position to raise the question upon this appeal.

Although the appellant recognizes the distinction between action No. 1 and action No. 2 so far as waiver is concerned, it still contends that there was no waiver on the part of the defendant in action No. 2. It is argued that there can be no waiver without a voluntary abandonment of a known right and that, when the defend-

ant accepted the renewal premiums during the seven years referred to, it did not know for a certainty that there had been misrepresentation on the part of the plaintiff as to his physical condition; that there was not such full knowledge of the facts in this respect as to constitute a waiver. Plainly, there is no merit in this contention. If there is anything to the argument, it might be said that the question was one of fact for the jury, and in the case before us it was submitted to the jury as a question of fact although against the judgment of the trial justice. The record shows that the defendant interposed the defense of false representations on the part of the plaintiff in action No. 1. It did this early in 1923, yet, after this date, kept on receiving and accepting the annual renewal premiums from the plaintiff, and each year in terms renewed the policy for the current year. Under such circumstances, I do not think it can be said that there was no waiver because defendant did not certainly know, that is, by judgment of a court, that false representations had been made by the plaintiff. During all this time the defendant might have brought an action to rescind this policy on the ground of fraud. Instead of that, by affirmative action, the defendant kept on renewing the policy year by year. I am satisfied that there was a clear waiver of this defense of fraud after plaintiff's claim of disability was made in September, 1922.

One other point must be considered. After the verdict had been rendered, defendant's counsel made a motion that the court apportion the recovery by reducing the amount of the judgments to $11,389.48 for the reason that the record disclosed that the insured carried insurance in other companies covering the same loss. It appears that the policy in suit, while providing for the payment of fifty dollars per week for total disability, made this provision subject to the modification contained in standard provision No. 17. This provision is as follows:

" 17. If the Insured shall carry with another company, corporation, association or society other insurance covering the same loss without giving written notice to the company, then in that case the company shall be liable only for such portion of the indemnity promised as the said indemnity bears to the total amount of like indemnity in all policies covering such loss, and for the return of such part of the premium paid as shall exceed the *pro rata* for the indemnity thus determined."

This provision is taken verbatim from clause 17 of paragraph (2) of subdivision (d) of section 107 of the Insurance Law (as added by Laws of 1913, chap. 155), except that the word " company " is substituted for the word "insurer," which is used in the statute.

The question of coinsurance was not submitted to the jury, but

was reserved by the trial court, and thereafter defendant's motion for apportionment was denied.

The record contains a reference to the other policies held by the plaintiff at the time of the trial. They were both issued by the National Life Insurance Company, of Montpelier, Vt. It appears that these two policies were life insurance policies, but contained riders providing for payment in case of disability through accident or disease.

The appellant claims that it is apparent from these riders that they covered the plaintiff for the same loss provided for in the policy in suit, and that, therefore, plaintiff's loss should be apportioned and the judgments reduced as stated. There is no claim that plaintiff ever gave written notice to the defendant that he had these other policies of insurance. He was permitted to testify that the agent who filled out his application for insurance with the defendant instructed him to state that he had no other insurance, the agent telling him that the policies were life insurance policies and that the riders did not change their nature. Plaintiff said that he told the agent all about these two other policies. I doubt the efficacy of this testimony. However, I am of the opinion that there is no merit in this point for the reason stated by the trial justice, to wit, that it was not shown that the identical loss of plaintiff was covered by these other policies. This appears when we examine the language of the several policies. The policy in suit provides for coverage in case of " disability from accidental injury or disease which necessarily, wholly and continuously disables him [plaintiff] from the performance of any and every kind of duty pertaining to his occupation or business." The language of the riders attached to the two other policies issued by the National Life Insurance Company provides for indemnity upon proof that plaintiff " has become totally and permanently disabled by bodily injury or disease, so that he is and will be thereby permanently and continuously prevented from engaging in any occupation or profession, or performing any work for compensation, gain or profit and that such disability has then existed for not less than sixty days."

It is plain from a reading of the above provisions that these policies with the National Life Insurance Company did not cover the same loss as the policy in suit. The policy sued upon is much more favorable to the plaintiff. It provides for payment for a disability that merely prevents his performing his duties as a physician while the other policies provide for payment only in case of total disability from the performance of all work in any occupation.

The judgment and order in each case should be affirmed, with one bill of costs to the respondent.

Present — LAZANSKY, P. J., RICH, YOUNG, SCUDDER and TOMPKINS, JJ.

Judgments and order unanimously affirmed, with one bill of costs to respondent.