71 P.(2d) 56

## GILBERT v. INTER-OCEAN CASUALTY CO. OF CINCINNATI, OHIO.

### No. 4193.

Supreme Court of New Mexico.

July 10, 1937.

Rehearing Denied Sept. 1, 1937.

Rodey & Dickason, of Albuquerque, and Jones, Hardie, Grambling & Howell, of El Paso, Tex., for appellants.

Marron & Rogers, of Albuquerque, for appellee.

BICKLEY, Justice.

Appellee held policies of the Mutual Life Insurance Company of New York which included disability benefits due to *total and permanent disability to follow a gainful occupation.* For convenience, we will hereafter refer to these as the Mutual policy. She thereafter applied for and received from appellant a policy which indemnified against the effects resulting in bodily injury or death. This policy provided for payment of specific sums in case of loss by accident of one or both hands,

feet, or eyes. It provided indemnity for loss from partial disability, and from loss of time due to sickness and also for loss due to total disability to perform "any and every, duty pertaining to the insured's business, or occupation" for twelve months and for a longer period if "the insured shall be *wholly and continuously disabled by bodily injuries from engaging in any occupation or employment for wage or profit.*" The definite overlapping of coverage arises from the language of the two policies quoted and italicized. The insured became totally disabled from following any gainful occupation and made claim for and received under the Mutual policy $50 per month. She asked $100 per month of appellant, which was paid for a while and then refused because it is claimed that in her application for the insurance she made a false statement material to the acceptance of the risk or the hazard assumed by the company; that this false statement amounts to a warranty and voids the policy. The application contained the following question:

"Are you now carrying or have you applied for any other accident or health insurance? If so, state fully. (Name of Company, Association or Society, and amounts carried in each must be stated.)"

The answer was, "No." Appellant further defends that in any event it is not liable for the full amount of $100 per month because of the provisions of section 17 of the policy commonly referred to as the standard proration clause, as follows:

"If the insured shall carry with another Company, corporation, association or society other insurance covering the same loss without giving written notice to the Company, then in that case the Company shall be liable only for such portion of the indemnity as the said indemnity bears to the total amount of like indemnity in all policies covering such loss, and for the return of such part of the premium paid as shall exceed the pro rata for the indemnity thus determined."

Appellant also claimed that it had paid to appellee more than she was entitled to and sought recovery thereof. Plaintiff sued appellant and obtained the verdict of a jury in her favor. Afterwards, motion by defendant for judgment notwithstanding the verdict was denied and judgment was entered against appellant.

In addition to the proposition heretofore mentioned, appellant asks us to review the errors assigned as follows:

"Appellant's Third Assignment of Error. * * * The court erred in refusing appellant permission to introduce three policies issued by the Mutual Life Insurance Company of New York to appellee in evidence for the purpose of showing that appellant would not have issued to appellee the policy sued on had it known of the existence of the three policies issued by the Mutual Life Insurance Company of New York, as under the evidence in this case the jury was entitled to pass upon such issue.

"Appellant's Fourth Assignment of Error. * * * The court erred in re-

fusing to allow the witness, G. A. M. Willson, who was State Manager of appellant for New Mexico at the time the policy sued on in this case was issued to appellee to testify that if he had known of the existence of the three policies issued by the Mutual Life Insurance Company of New York he would not have allowed appellant to issue the policy sued upon in this case in the amount for which it was issued, as the undisputed evidence in this case showed that appellant did not know of the existence of the said three policies which appellee held with the Mutual Life Insurance Company of New York at the time she obtained the policy from appellant, sued upon in this case."

The case is of first impression here and the decisions cited from other jurisdictions are of little help. First we take up section 17 of the standard provisions of the policy heretofore quoted. It does not say that if the insured shall carry other policies designated or named accident or health policies proration shall be allowed. The names of the policies are not determinative of the character of the coverage. We must disregard form and seek an understanding of the substance. The language is clear and unambiguous. If insured carries "other insurance covering the same loss" without notice to appellant, the proration clause is operative. It makes no difference whether the "other insurance" existed at the time appellant's policy was issued or subsequently. Unquestionably the policies of the Mutual Life Insurance Company involved and that issued by appellant are characterized by marked differentiating features, yet they are alike in some particulars. They overlap in two places at least. Both cover death resulting from accident; in case of total permanent disability resulting in inability of insured to engage in any gainful occupation or employment for wage or profit, disability benefits may be recovered under each. Under the policy issued by appellant there are coverages not in the mutual policy. It takes death by accident or the existence of a certain condition of total permanent disability to bring into operation both policies. Viewed prospectively from the standpoint of the policies above, if the provisions of each conceivably, nevertheless remotely, could cover loss due to total permanent disability as therein defined, then they each covered the same loss and absent notice to appellant the appellee would be required to accept proration. The matter may also be viewed retrospectively after the event. Under the facts crystallized by the event, it appears that insured claims that both policies do cover the same loss. There can be no vitality to the proration clause and the insurance company is not concerned unless and until insured asserts a right to recover under both policies for the same loss. It seems inconsistent for insured to claim indemnity under each policy for the same loss and in the same breath say that they do not cover the same loss. We think clause 17 was designed as a dragnet thrown out whereby regardless of existing insurance and regardless of the cor-

rectness of answers in application relative thereto, and even though such answers under the facts do not void the policy if it is disclosed that the insured had existing insurance or afterwards acquired same which in fact does cover the loss, indemnity for which insured asserts, and no notice has been given, the insurer may avail itself of the limitation of liability which it has reserved in the contract of insurance. We hold that the trial court was right in viewing this point as a law question only, but that he reached an erroneous conclusion.

Appellant's proposition that appellee's negative answer to the question contained in the application "Are you carrying or have you applied for any other accident or health insurance?" bars her recovery must be decided upon considerations of both law and fact. It is so presented.

Here the good faith of insured in making the answer is a factor and the materiality of the statement implied is also an element. The trial judge having concluded that the policies did not cover the same loss quite naturally concluded that the insured had answered correctly that she did not carry any other accident and health insurance. In so concluding, the trial judge was doubtless influenced by the so-called "dominant feature test." That is, in making a comparison of policies of insurance to determine whether applicant correctly appraised the form of insurance provided in the different policies the dominant features of each may be considered as characterizing them as one sort or the other. This test is a fair one when testing the intention and good faith of the applicant in making her answer and applied would doubtless absolve her from a charge of fraud or intent to deceive by her answer. But appellant did not in the lower court and does not here urge the falsity of the statement in the willful sense. But as we said in our discussion of the first point, we are not to make our decision upon consideration of name and label alone. The question is not "Do you own any accident or health policies?" It is: "Are you carrying * * * any other accident or health insurance?" Section 71-152, N.M.Stat.Anno.Comp.1929, defines various forms of insurance. Subsections (1) and (2) are as follows:

"(1) *Life insurance:* Upon the lives of persons, including disability benefits, and every insurance appertaining thereto, and to grant, purchase, or dispose of annuities and endowments.

"(2) *Disability:* Against disability resulting from bodily injury or sickness, or death resulting from bodily injury in any form, and every insurance appertaining thereto, including quarantine and identification."

These definitions are in part for the purpose of aiding in application of the regulatory provisions contained in the same chapter. Apparently under the provisions of said section a licensed company may transact the form of insurance mentioned

in (2) or the forms specified in both subsections (1) and (2). But we apprehend that because the disability insurance may be included in as a part of, or supplemental to a contract of life insurance, its nature, form, or characteristic has not thereby been changed. The very loss suffered by appellee and for which she claims indemnity under the Mutual policy results from bodily injury or sickness. The statutory definition of disability insurance is a good definition of accident insurance. Cooley's Briefs on Insurance defines accident insurance: "Insuring against loss or damage due to accidental injury to the person insured and resulting in disability or death." Under the Mutual policy, if insured is totally and permanently disabled as a result of accidental injury or ill health, she is entitled to recover disability benefits. How can it be soundly argued that this is not accident or health insurance?

Having concluded that appellee made a false answer to the question as the word "false" is understood as meaning "erroneous," this is by no means to say that because thereof she is barred of recovery on the policy sued on. Whether she is barred involves considerations of law and fact. Our Legislature has indicated a public policy that insurance policies of this nature shall contain substantially a provision that all statements made by the insured shall in the absence of fraud be deemed representations and not warranties. Section 71-161, N.M.S.Anno.Comp.1929. Whether this provision is strictly applicable to the form of insurance transacted in the policy issued by appellant we do not decide, but in any event appellant has complied with the spirit of it because section 12 of the application is in part as follows: "Do you agree * * * that the falsity of any statement herein shall bar the right to recovery *if* such statement is made with intent to deceive *or* is material either to the acceptance of the risk or the hazard assumed by the Company." (Italics ours.) This language does not import a warranty that the statement if merely erroneous as an appraisal of the extent of coverage contained in other existing insurance is material. Without declaring any rule on the subject, it seems that to constitute the statement implied in the erroneous answer a false statement made with intent to deceive or a false statement material to the acceptance of the risk, etc., some proof is required. At least that is the way the matter was presented in the trial court and here. From the transcript before us, it does not appear that applicant answered the question last quoted. See Krisberg v. Inter-Ocean Casualty Co., 39 N.M. 107, 41 P.(2d) 519. However, the absence of an answer to the question if in fact it was not answered becomes unimportant because as we read the pleadings it seems that defendant assumed that it was answered and plaintiff's reply acquiesced therein. No evidence was offered by appellant to show that the statement was made fraudulently or with intent to deceive. The burden rested on appellant to show that the statement was material. This burden the appellant sought to dis-

charge by the offer of the evidence referred to in assignments of error 3 and 4 heretofore quoted. The tenders were refused. Herein the trial court committed errors.

In the course of our argument it has developed that the likelihood of a situation arising when the coverage of the Mutual policy would overlap that of the policy sued on would appear to be remote, nevertheless we could not say as a matter of law that such remote possibility would not have been regarded by appellant as material to the acceptance of the risk by the company.

The judgment is reversed with instructions for a new trial upon an issue framed involving the effect of the questions and answers presented in paragraphs 8 and 12 of the application upon the question of liability of the appellant, and after such determination the rendition of judgment in accordance therewith and with regard to the principles herein expressed, and it is so ordered.

HUDSPETH, C. J., and SADLER, J., concur.

BRICE, Justice (specially concurring).

The terms of an insurance policy should be so plain that "a wayfaring man, though a fool, need not err therein"; yet paragraph 17 of the policy sued on has been the subject of construction in numerous courts, and no two have ever agreed upon its meaning. Dustin v. Interstate Business Men's Accident Ass'n, 37 S.D. 635, 159 N.W. 395; L.R.A.1917B, 319; Aaberg v. Minnesota Commercial Men's Ass'n, 161 Minn. 384, 201 N.W. 626; Wahl et al. v. Inter-State Business Men's Accident Ass'n, 201 Iowa, 1355, 207 N.W. 395, 50 A.L.R. 1374; Provident Life & Accident Insurance Co. v. Rimmer, 157 Tenn. 597, 12 S.W.(2d) 365; Massachusetts Bonding & Insurance Co. v. Santee (C.C.A.) 62 F.(2d) 724; Graham v. Business Men's Assurance Co. of America (C.C.A.) 43 F.(2d) 673; Oglesby v. Massachusetts Accident Co., 230 App.Div. 361, 244 N.Y.S. 576; International Travelers' Ass'n v. Gunther (Tex. Com.App.) 280 S.W. 172; Id. (Tex.Civ. App.) 269 S.W. 507; Arneberg v. Continental Casualty Co., 178 Wis. 428, 190 N.W. 97, 29 A.L.R. 93.

The insurance company inserted this provision in its policies and the appellee had to accept it as written or not at all. Her premiums were paid and accepted by the appellant; and her right to indemnity became a question only after the eventuality insured against had occurred, which in this case would not happen to one in a thousand holding such policies. She is charged with knowing the existence and meaning of paragraph 17, though she may not have read the policy; or having read it (like courts who have construed it), failed to grasp its meaning, whatever it may be. It should be construed liberally in behalf of the insured; a cardinal rule of construction regarding insurance contracts, if susceptible of more than one meaning.

But with these considerations operating in favor of the appellee, and with a sympathetic attitude toward her claims, I am unable to find in the language of paragraph 17 of the policy in suit any support for them.

We all agree that the meaning of "other insurance covering the same loss" as used in paragraph 17 is the key to the solution of the principal question to be answered.

There are but two possible meanings: "Other insurance" either includes *any* overlapping insurance, whether accident, health, or life; or else it has reference to insurance indemnifying against all of the eventualities insured against by appellant. There is no middle ground.

At the time the policy was issued there was no "loss," and "other insurance covering the same loss" could have no reference to a loss that does not occur. It required death, accident, or sickness to bring "loss" into the transaction. It looks to the future; applies prospectively; that is, if and when a liability arises under the policy sued on the appellee is carrying with another company, etc., other insurance covering the same loss (that is, the loss for which indemnity is claimed); written notice of which had not been given appellant, then the proration provision would apply. This is the only meaning I am able to find in the language used.

If the words "without giving written notice" had been "without *having* given written notice," there could not be a shadow of a doubt. But the subsequent words "indemni-

ty promised" could only have reference to an indemnity promised in case of a presupposed eventuality (loss) that would call for such indemnity; and the words "amount of *like* indemnity" could only have reference to indemnity promised in case of a like eventuality. Only if we can hold that the word "loss" means the whole of the eventualities, the happening of any one of which would entitle the holder to indemnity (and no such meaning can be conjured out of it by me, though I strongly wish for it), could there be found support for appellee's claim. This would mean that the Mutual policies must have been effectively identical in the health and accident features with the policy in suit for the proration provision to apply, and by no stretch of the will can such result be reached by me with any support of reason. Such provisions are traps for the unwary and should be eliminated from policies of insurance by statute as in Missouri. State ex rel. Business Men's Assurance Co. v. Allen et al., 302 Mo. 525, 259 S.W. 77. I reluctantly concur in the majority opinion.

ZINN, Justice (dissenting).

I cannot agree with the majority. The case before us is one of first impression in this jurisdiction. However, pro-ration provisions similar to section 17 found in the health and accident policy of the appellant have been construed in other cases. The term of the Mutual Life Insurance policies held by appellee and the policy involved in this litigation are different in

many respects as an examination of such policies clearly discloses. The Mutual Life policies are the usual life insurance policies containing a "total disability" provision paying benefits for such casualty, and the policy involved in this litigation is a health and accident policy which likewise contains a clause paying for total disability. The two types of policies must be construed in their entirety to determine what was intended by section 17 of the policy here sued on. The dominant feature of each of the Mutual policies is life insurance. Incidental thereto, though a part of it, is the total disability clause contained in the Mutual Life policies. The policy of appellant is a health and accident contract of insurance. Incidental thereto, though a part of it, is the "total disability" provision. The Mutual policies are life insurance policies and not accident and health insurance policies. The Mutual policies did not insure against disease or accidents unless death or total disability ensued. On the contrary, the appellant's policy insured against sickness and accident irrespective of the ultimate result.

In a separate provision of each of the Mutual policies as well as the policy of the appellant, we find a provision to the effect that, in case of total and presumably permanent disability of the insured, she was to receive certain benefits. Herein is the only similarity between the two types of policies. From all this it seems clear that the primary feature of the Mutual policies was insurance against death irrespective of the cause. The life insurance feature of the appellant's policy paid only if the insured died as the result of an accident. Its primary and dominating feature was insurance against any sickness or accident, whether partial or total disability resulted, and against accidental death. As said by the Missouri court in Jones v. Prudential Insurance Co., 208 Mo.App. 679, 236 S.W. 429, 432: "In deciding the character of this contract between the parties, it may be well to bear in mind the difference between an ordinary life policy and an accident policy."

When this difference is borne in mind, it is clear that the insurance carried in the Mutual Life Insurance Company is not "other insurance covering the same loss." The dominant feature of the policy is the test by which we determine the kind of insurance intended. As was said by the Supreme Court of Missouri: "The mere addition of one or more features or elements in a contract of insurance on life, that may serve to give the contract or policy a particular designation in the business or insurance world, will not in the least devest the contract or policy of its chief character of insurance on life, or make the contract other than life insurance." Logan v. Fidelity & Casualty Co., 146 Mo. 114, 47 S.W. 948, 950.

The Missouri Court of Appeals in Jones v. Prudential Ins. Co., supra, said: "In deciding the character of this contract between the parties, it may be well to bear in mind the difference between an ordinary

life policy and an accident policy. In an ordinary life policy the insurer contracts to pay a certain sum of money when satisfactory proof is made that the insured has died. Death is the contingency which must happen that will create liability under the contract. Liability attaches under such a policy when death occurs, and the policy is in good standing irrespective of the cause of the death, whether it be brought about by natural causes, by intention, or by accident; and, in the broad sense, any life insurance policy is accident insurance, if perchance the death is occasioned by reason of an accident. On the other hand, the primary contingency insured against in an accident insurance policy is that no accident will befall the insured under the terms of the policy and in such time as the policy is kept alive. * * * It may be said that in an ordinary life policy death is the contingency insured against, and if it be the result of an accident such accident is but incidental, while in the accident policy the accident is the thing insured against, and death is but one of the incidents or classes of injuries insured against."

Neither appellant or the Mutual Life Insurance Company conceive of their policies as being total disability insurance policies. One is a life insurance policy. The other is an accident and health insurance policy. The construction contended for by appellant, I am convinced, is one never contemplated by the parties, and not justified by the facts.

The first object of construction is to ascertain the intention or meaning of the parties, and to interpret the contract by that intention or meaning. The purposes of the two policies throw light on the intention or meaning, and it could not have been the intention of the parties to the accident policy to contract against life insurance which contained an additional proviso against total disability as "covering the same loss," as that not insuring against parties or total loss by injuries or sickness. Had the appellant intended otherwise, it could have so provided in section '17 in more specific terms.

It has been so held in the case of Arneberg v. Continental Casualty Co., 178 Wis. 428, 190 N.W. 97, 100, 29 A.L.R. 93, by the Supreme Court of Wisconsin. That court had under consideration a clause of an accident policy identical with the one now under consideration and it was held: "The contention of appellant is that the policy issued by the Northwestern Mutual Life Insurance Company was for the same loss covered by the accident insurance policy sued upon, and that defendant is liable only for such portion of the indemnity promised in its policy as the said indemnity bears to the total amount of like indemnity in all policies covering such loss. While both policies furnished indemnity in case of accidental death, they were not alike in any other provision. The Northwestern Mutual life insurance policy provided indemnity in case of death from whatever cause. This

of course included death by accident. It is well understood that death benefits are not the dominant feature of an accident insurance policy. The dominant feature of that kind of a policy is indemnity for loss of time resulting from accident. These two policies overlap only in the one contingency—accidental death. In no other respect are they alike and in no other respect did they cover the same loss."

Though the question in the Arneberg Case was not related to the total disability provisions of the policies in question but predicated on the so-called "double indemnity" provisions in the event of accidental death, yet the legal principles involved the construction of a provision in the accident policy identical with section 17 herein, and are the same.

The contents of the policy which appellee purchased are dictated by the appellant, and the appellee could not before accepting it add one word to or subtract one word from that contract. This condition of affairs has caused courts everywhere to hold that the contract must be strictly construed against the insurer, and if there be any doubt as to the construction of the contract, the doubt must be resolved in favor of the insured. We have so held. Collier v. Union Indemnity Co., 38 N.M. 271, 31 P.(2d) 697; Nikolich v. Slovenska Nardona Podporna Jednota, 33 N.M. 64, 260 P. 849. Section 17 was prescribed by the appellant and its terms could have been made much clearer had appellant desired to specifically intend a life insurance policy containing a provision paying for total disability as a policy of insurance covering the same loss as its own policy. Liberal intendment and enlarged construction are used to favor the insured and not the insurer.

The majority opinion is predicated upon the theory that "other insurance" does not mean "other insurance policy." Technically that may be correct. Appellant contends that the appellee's application for insurance with appellant is a part of the policy. It is therein provided that the falsity of any statement made in the application bars the insured from any right of recovery, and appellee's answer to question 8 of such application was to the effect that she did not carry any other health and accident insurance. According to appellant's theory, this was untrue, was unknown to appellant, was material to the acceptance of the risk assumed by appellant, and that this constituted a breach of warranty barring the right of appellee to recover from appellant. Let us place the appellant and appellee in the exact positions they were in at the time of the creation of the contract and in doing so we have a better understanding of the resultant obligations under the contract.

The appellant by its own formulated and prepared application, through its own agent, G. A. M. Wilson, asked the appellee the following question:

"Are you carrying or have you applied for any other accident or health insurance? If so, state fully the name of the company, association or society, and amounts carried in each must be stated."

To this appellee replied that she had not applied for any other accident or health insurance. She answered truthfully. To her mind, the Mutual Life Insurance Company policies were "life insurance" policies and not accident or health insurance policies. She was not carrying "any other accident or health insurance" policy as generally understood. The record is silent as to whether or not the agent of the appellant explained to appellee that such life insurance policies carrying total disability provisions were (according to the present claim of appellant) health and accident policies. The appellee answered that she had no accident and health insurance. Such answer was truthful in fact and in law.

Only one conclusion can be reached. To the mind of the appellee at the time she applied for insurance the question propounded related to health and accident insurance policies and not to life insurance policies. The question propounded by appellant to the appellee indicates the appellant's own conception of its insurance contracts, namely, health and accident insurance and not life insurance. The question propounded by appellant indicated a desire upon the part of appellant to determine whether appellee carried other health or accident insurance policies, not life insurance policies which may have a clause insuring against total disability.

As I construe the two types of policies, and in light of statutory recognition of their distinctive features, the life insurance policies of the Mutual Life Insurance Company with their total disability provisions are not "other insurance covering the same loss" as contemplated either in answer to question 8 or which required notice of appellant under the provisions of section 17 of its policy. What appellant meant in asking question 8 was other accident and health insurance and that is exactly what appellee meant when she answered "no" to question No. 8. This meaning and understanding of the contract is what the parties to the insurance contract are bound by. This is the same meaning to be given section 17 of the insurance contract. To adopt a strict view in favor of a partial forfeiture of the insurance bought and paid for the appellee is a view of the law in which I cannot concur.