197 P.2d 897

## FLOECK v. UNITED BENEFIT LIFE INS. CO.

### No. 5067.

Supreme Court of New Mexico.

Sept. 24, 1948.

Otto Smith, of Clovis, for appellant.

J. V. Gallegos, of Tucumcari, for appellee.

SADLER, Justice.

The question for decision is whether the proration clause found in the standard form of accident insurance policy, limiting liability of insurer to a specified part of total amount of like indemnity in all policies covering the same loss, absent written no-

tice to company of the other insurance, is applicable to death benefits.

The plaintiff below, the appellee here, is the widow and sole beneficiary designated in two certain policies of insurance in which her husband, Gerald Edgar Floeck, was named as insured, taken out during his lifetime and in full force and effect at the time of his death on May 26, 1946. The policy in suit was issued by the defendant, United Benefit Life Insurance Company of Omaha, on October 18, 1945, insuring the plaintiff's husband, among other things, against loss of life resulting directly from bodily injuries sustained through purely accidental means, in the sum of $2,500. It contained the standard proration clause as section 17 thereof reading:

"17. If the Insured shall carry with another company, corporation, association or society other insurance covering the same loss without giving written notice to the Company, then in that case the Company shall be liable only for such portion of the indemnity promised as the said indemnity bears to the total amount of like indemnity in all policies covering such loss, and for the return of such part of the premium paid as shall exceed the pro rata for the indemnity thus determined."

The other policy mentioned was with Federal Life Insurance Company of Chicago and afforded indemnity against loss of life sustained solely and directly by being struck, knocked down or run over by any mechanically propelled vehicle, while on a public highway. It was dated November 5, 1941, and was taken out by the plaintiff with her husband as insured while he was on a hunting trip. She saw an advertisement of the policy in the Denver Post, a daily newspaper published at Denver, in the State of Colorado and, the amount of the premium being small, filled out the form of application appearing in the advertisement and mailed it to addressee named along with the premium of $1.75. She never informed her husband of the existence of this policy and he died in ignorance of its issuance. Following his death, the plaintiff was paid the sum of $1,050 under this policy. The defendant having declined to pay the sum provided for death benefit under the other policy herein sued upon, except on the basis of proration provided by clause 17, supra, this suit followed.

It was stipulated at the trial that no notice, written or otherwise, was ever given the defendant of the fact that this additional policy had been taken out and that it first learned of same following the death of its insured. The facts already recited all are within the trial court's findings and it made certain other findings of importance to a decision, as follows:

"7. That the fact that the Federal Life Insurance Policy was in force in October, 1945, at the time that defendant's trial ex-

hibit 1 policy was issued, was not material to the acceptance of the risk in issuing to Gerald Edgar Floeck the United Benefit Life Insurance Company policy, defendant's Trial Exhibit 1, insofar as death benefits are concerned.

"8. That the provisions in clause No. 17 of the United Benefit Life Insurance Company policy, defendant's Trial Exhibit 1, are not applicable to loss of life or death benefits, but are contained in the contract of insurance to protect the insuror against excessive or fraudulent claims for loss of earnings or loss of time.

"9. That on June 19, 1947, at the time this cause was called for trial, the defendant tendered to plaintiff the sum of $1813.-90, together with costs of suit, which tender was refused by the plaintiff."

The trial court concluded that the proration clause was not applicable to death benefits, declined to enforce its provisions and rendered judgment for the full amount provided as a death benefit. It is that judgment the defendant brings before us for review on appeal.

■ A consideration and appraisal of the decisions dealing with the specific question presented persuade us that the trial court erroneously excluded death payments from an application of the provisions of section 17 of the policy, known as the standard proration clause. Graham v. Business Men's Assur. Co., 10 Cir., 43 F.2d 673; Massachusetts Bonding & Insurance Co. v. Santee, 9 Cir., 62 F.2d 724; International Travelers' Ass'n v. Gunther, Tex.Com. App., 280 S.W. 172. Also, see annotations in 119 A.L.R. 765, 776 following Bowles v. Mutual Benefit Health & Accident Association, 4 Cir., 99 F.2d 44, 119 A.L.R. 756; and annotation in 50 A.L.R. 1380 following Wahl v. Interstate Business Men's Acc. Ass'n, 201 Iowa 1355, 207 N.W. 395, 50 A.L.R. 1374. Cf. Gilbert v. Inter-Ocean Casualty Co., 41 N.M. 463, 71 P.2d 56; Dustin v. Interstate Business Men's Accident Association, 37 S.D. 635, 159 N.W. 395, L.R.A.1917B, 319; Woods v. National Life & Accident Ins. Co., La.App. 166 So. 501; Aaberg v. Minnesota Commercial Men's Association, 161 Minn. 384, 201 N. W. 626.

In an able and persuasive opinion by the United States Circuit Court of Appeals for the Tenth Circuit in Graham v. Business Men's Assur. Co., supra [43 F.2d 674], dealing with the precise contention here urged by counsel, the court said:

"The second contention of plaintiff is that the provision applies only to loss of time and not to loss of life. Plaintiff argues that the reason for the provision is to protect the company against malingerers; that men might feign injury to collect large indemnities for loss of time, but do not feign death for that purpose.

But, where language used by the parties is clear, courts are not justified in ignoring it, however plausible the reasons advanced."

Likewise, the Circuit Court of Appeals of the Ninth Circuit disposed of a similar contention in Massachusetts Bonding & Ins. Co. v. Santee, supra [62 F.2d 726], on the same reasoning. It said:

"At the time of his death the insured carried another accident policy in the Sentinel Life Insurance Company. Both policies covered loss of life by accidental means. The learned trial court held that there could not be an apportionment of a loss arising out of the death of a human being, and declined to give effect to section 17 of the policy on the prorating basis. We are of opinion that this was error. The Washington statute expressly authorizes the insertion of section 17 in the policy, and since it is not against public policy it is as binding upon the contracting parties as any other provision of the contract. The meaning of the section is plain, and we can see no good reason why it should not be enforced. This prorating provision of the contract could easily have been avoided by the insured by simply giving notice of the existence of the other policy."

Dealing with a like question in International Travelers' Ass'n v. Gunther, supra [280 S.W. 173], the Texas Commission of Appeals, whose opinion was approved by the Supreme Court of that state, said:

"The rider covers loss of life only when caused by accidental means, and the policy involved in this suit covers loss of life under no other contingency. The two overlap in the only contingency provided by the rider. As to the loss of life, their coverage is identical, and the rider covers no other loss. The rider covers no loss in any respect in which same is not also covered by this policy. Therefore, they both necessarily cover the same loss in respect to the death of John F. Gunther."

While it is true, as pointed out by counsel for plaintiff, we were not dealing with a death case in Gilbert v. Inter-Ocean Casualty Co., supra [41 N.M. 463, 71 P.2d 57], nevertheless, we were called upon to construe this clause in the policy and determine its validity. We sustained its validity and the very ground upon which some courts have declined to give it effect, the "dominant feature" theory, was rejected in the application sought to be made of it. We said:

"We must disregard form and seek an understanding of the substance. The language is clear and unambiguous. If insured carries 'other insurance covering the same loss' without notice to appellant, the proration clause is operative. It makes no difference whether the 'other insurance' existed at the time appellant's policy was issued or subsequently. Unquestionably the policies of the Mutual Life Insurance

Company involved and that issued by appellant are characterized by marked differentiating features, yet they are alike in some particulars. They overlap in two places at least. Both cover death resulting from accident; in case of total permanent disability resulting in inability of insured to engage in any gainful occupation or employment for wage or profit, disability benefits may be recovered under each. Under the policy issued by appellant there are coverages not in the mutual policy. It takes death by accident or the existence of a certain condition of total permanent disability to bring into operation both policies."

We are not unmindful that some courts reach a different conclusion for various reasons other than the "dominant feature" theory. Provident Life & Accident Ins. Co. v. Rimmer, 157 Tenn. 597, 12 S.W.2d 365; Arneberg v. Continental Casualty Company, 178 Wis. 428, 190 N.W. 97, 29 A.L.R. 93; Wahl v. Interstate Business Men's Accident Ass'n, 201 Iowa 1355, 207 N.W. 395, 50 A.L.R. 1374; and State ex rel. Business Men's Assur. Co. v. Allen, 302 Mo. 525, 259 S.W. 77. It is worthy of mention, however, that every theory invoked as a basis of decision in any of these cases is rejected, either by express holding or by the rationale of our opinion, in Gilbert v. Inter-Ocean Casualty Co., supra. Take for instance the Tennessee case of Provident Life & Acc. Ins. Co. v.

Rimmer, and the Missouri case of State ex rel. Business Men's Assur. Co. v. Allen. In each case the Supreme Court of the state named held the proration clause void as violating other specified policy provisions. In the Gilbert case, we not only sustained the validity of the clause but the legislature since has sanctioned its use in health and accident insurance policies. Laws 1947, c. 207, § 8(b).

Little good can result from speculation as to a reason for inclusion of the proration clause in the policy, notwithstanding the factor of moral hazard suggests itself most strongly. We may concede that this factor weighs more heavily in a disability than in a death case, yet it is present to a recognizable extent even in a death case. Be that as it may, the clause is there and the language is plain and unambiguous. As already stated, its validity was sustained by us in Gilbert v. Inter-Ocean Casualty Co., supra, and the use of it in health and accident policies since has received legislative sanction. Laws 1947, c. 207, § 8(b). Under the circumstances, nothing remains for us to do save give it effect according to its meaning.

But it is argued by counsel for the plaintiff as an ancillary proposition that the proration clause should be denied effect because the insured died in ignorance of the issuance or existence of the second policy. The trial court so found but was

never called upon to determine whether that circumstance would have rendered the proration clause inoperative, had it ruled otherwise than it did on its applicability to death benefits. Having ruled the questioned clause inapplicable to loss of life or death benefits and that the existence of other policies covering death by accident was immaterial to the risk so far as death was concerned, the trial judge may have considered immaterial as well any ruling by him on failure to give notice of other insurance covering the same loss where such failure was attributable to insured's lack of knowledge thereof. At any rate, he made no such ruling, nor did plaintiff's counsel request any.

If a ruling had been invoked and proved adverse, it might have served as a basis for assigning cross-error under Supreme Court Rule 17, § 2, 1941 Comp. § 19-201. It is barely possible, too, that in failing to rule upon this point the trial judge was giving some effect to defendant's exception to the finding on this subject, namely (1) that the insured's ignorance of the policy taken out by his wife was immaterial and (2) that such ignorance was not pleaded as a defense. It thus seems truly doubtful whether the question presented in argument is before us for review. Nevertheless, since to deny consideration to counsel's argument in this behalf would deprive the plaintiff of an otherwise valid recovery, if his contention be well taken, we shall consider and resolve the question.

Many decisions are cited by counsel for plaintiff holding that a policy of fire insurance, and even life and accident insurance policies, will not be forfeited where other insurance exists without the knowledge or consent of the insured. Continental Insurance Company v. Riggs, 277 Ky. 361, 126 S.W.2d 853, 121 A.L.R. 1421, with annotation of the subject beginning on page 1428; Pacific States Fire Ins. Co. v. C. Rowan Motor Co., 122 Or. 665, 260 P. 441; Golden v. National Life & Accident Insurance Co., 61 Ga.App. 197, 6 S.E.2d 112; Harris v. Louisiana Industrial Life Ins. Co., 19 La.App. 589, 141 So. 103. We have no quarrel with the reasoning of these cases, but they present a factual situation different from that here present. In the cases cited the courts were called upon to decide whether by reason of a claimed false answer regarding other insurance in an application therefor, as in Golden v. National Life & Accident Ins. Co., supra, or by reason of the breach of a policy provision against other insurance except upon notice to and consent of the insurer, as in Continental Insurance Co. v. Riggs and Pacific States Fire Ins. Co. v. C. Rowan Motor Co., both supra, an insured's policy should be declared forfeited and recovery wholly denied, because of the existence of other insurance taken out by third parties without the knowledge or

consent of the insured. Under such circumstances the courts of sister states in the cases cited and others of the same kind have declined to enforce a forfeiture but instead have permitted recovery. The insured's good faith played an important part in the decision where the question arose on an answer to a question about other insurance. In this very type of case, however, the courts hold an insured may not eat his cake and have it, too. Speaking upon this phase of the case in Continental Ins. Co. v. Riggs, supra [277 Ky. 361, 126 S.W.2d 856], the Supreme Court of Kentucky said:

"A person cannot, however, after the property has been destroyed, accept a policy which was procured without his knowledge or consent, and which, at all times prior to the fire, he had no intention to accept, having relied up to this time upon a policy upon the same property procured by himself, without accepting all of the provisions of the policy which had been procured without his knowledge. *After a loss one may ratify the act of another who had procured a policy for him without his knowledge or authority, yet if he does so he adopts the whole policy."* (Emphasis ours.)

In Kennedy v. Mennonite Mutual Fire Ins. Co. of Kansas, 96 Kan. 598, 152 P. 639, 640, a fire insurance policy had been taken out by a mortgagee without insured's knowledge, according to his testimony, and was turned over to him when he satisfied the mortgage. In seeking recovery on the policy which contained the usual concurrent insurance clause, the court adverted to the plaintiff's testimony as to lack of knowledge of existence of the policy when it was issued and when he took out additional insurance. The defendant company invoked the concurrent insurance clause as a defense. The court said:

"Assuming this to be true, there was obviously no actual contract between the parties, unless it resulted from the plaintiff electing to ratify what had been done in his behalf and to treat the policy as though it had been properly issued upon his request. *But he was required to adopt the transaction as a whole, or not at all. He could not accept its benefits and repudiate its burdens."* (Emphasis ours.)

We think the reasoning of the opinions in the two cases just quoted from is applicable here. The plaintiff in this case is the beneficiary named in the two policies mentioned. It was through her agency that the other policy issued "covering the same loss," in this case death by accident, of which the insured died in ignorance and the insurer remained in ignorance for some time following insured's death. Having collected the other insurance, she now seeks the benefit of this policy by a recovery of its full amount by avoiding the

provision of the policy stipulating that under the factual situation here present, namely, other insurance without written notice to insurer, a specified sum less than the full amount should be payable. In this respect, the beneficiary stands in the shoes of the insured. Her rights do not rise above what his would have been were he alive and seeking disability benefits following accidental injury. She must take the policy as she finds it and abide by its terms.

The judgment under review will be reversed and the cause remanded with a direction to the trial court to set aside its judgment and for further proceedings consistent and in conformity with the views herein expressed. The defendant will have its costs in this court.

It is so ordered.

LUJAN, McGHEE, and COMPTON, JJ., concur.

BRICE, Chief Justice (specially concurring).

The decision in Gilbert v. Inter-Ocean Casualty Co., cited in the opinion of the Court in which I reluctantly concurred, is in my opinion wrong, and the dissent of Mr. Justice Zinn is correct. This was the conclusion of the U. S. Circuit Court of Appeals (4th Circuit), opinion by Judge Parker, Bowles v. Mutual Ben. Health & Accident Ass'n., 99 F.2d 44, 119 A.L.R. 756, 757, in which the Gilbert case is criticized.

However, the distinctions pointed out by Mr. Justice Zinn in his dissent, between the policies therein involved, do not obtain in this case. There the dominant feature of one was life insurance, the other accident and health. Here both are accident policies, and each covers accidental death.

I stated in my concurring opinion in the Gilbert case, and restate it here, that paragraph 17 in an insurance policy is a trap to catch the unwary that should be eliminated. It has been approved in this state by statute. It should have been made unlawful and void when incorporated in a policy instead. It is not too late for the legislature to correct this blunder, and protect the public against the injustice that we find here.