the only spring upon the premises; his usual course of husbandry; the number of grazing animals usually kept by him upon the premises; the location of his pasture lands, and the lowest depression of the natural grade of the land in the line of the proposed railroad; and he delivered the deed containing the provision above quoted, knowing all these facts. Subsequently he opened negotiations with the railroad company, with a view of surrendering some of his rights to crossings at grade for one subway. These negotiations continued for some time, without a hint or suggestion but that he would have to pay the difference in the expense of construction, thus showing clearly the construction put upon the covenant or agreement by the now complaining party. What he now claims to be the most important crossing he did not reserve or mention in the deed. He was evidently unwilling to leave the subject of his statutory rights, or he would have given the deed without conditions.

Counsel for petitioner urges that, at the time of giving the deed, the petitioner was ignorant of the grade at which the tracks would pass the lowest point of depression in the surface of the right of way. He could not have been entirely ignorant. His knowledge of the surface of the land must have enabled him to judge the grade approximately, and, if this were not sufficient, he could have compelled the establishment of the grade for his information, or withheld the deed. My judgment is that the parties have treated upon the subject and established by themselves, without the assistance of the court, and regardless of the statute, exactly what their respective rights are, and as they must remain, and that the court has no reason to interfere.

If the owner may waive or release the statutory obligations as asserted in Smith v. Railway Company, 63 N. Y. 61, then he certainly may limit himself as to the number and the kind of crossings to which he is entitled. Three surface grade crossings are all that are "reasonably necessary" to accommodate the owner, and, if located with reference to distance, would require traveling but about 400 feet from any point on the line of the road to reach a crossing. Beside, the highway affords some relief, while three surface grade crossings and one subway are more than are "reasonably necessary" to accommodate the owner. It is doubtless true that a subway would afford additional convenience to the owner, but the position in which he has placed himself seems to have precluded any assistance from the courts.

The conclusion reached requires a dismissal of the petition, and that course is recommended.

Argued before McLENNAN, P. J., and SPRING, WILLIAMS, KRUSE, and ROBSON, JJ.

Chas. B. Hill, for petitioner.
Thompson & Sheldon, for defendant.

PER CURIAM. Order reversed and petition dismissed, with costs, on the opinion of Frost, referee.

---

DINEEN v. GENERAL ACCIDENT INS. CO. OF PHILADELPHIA.

(Supreme Court, Appellate Division, Fourth Department. May 6, 1908.)

1. INSURANCE—APPLICATION—WARRANTIES—CONSTRUCTION.

An insurance company seeking to make every statement whether material or otherwise a warranty must be held to a very strict rule when endeavoring to avoid payment because of answers to inquiries or declarations which it has framed, and, if any ambiguity exists, the construction most favorable to insured will obtain.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 28, Insurance, §§ 195, 292–294.]

2. SAME—ACCIDENT INSURANCE—BREACH OF WARRANTY.

In his application for accident and health insurance, plaintiff agreed that the statements contained therein were warranties, stating, among

other things, that he had no accident or health insurance, that no application made by him for insurance had ever been declined, and that no accident or health policy issued to him had been canceled. Prior thereto plaintiff had applied for life insurance through the same solicitor who had taken his application for accident insurance, and his application had been rejected and notice of its rejection sent to the solicitor, who informed plaintiff's wife that the application had been postponed, and that in three months he would reopen the case. Plaintiff never knew that his application had been declined. *Held*, that the statements in the application for accident and health insurance related only to such insurance, and not to the application for life insurance.

3. ACCORD AND SATISFACTION—WHAT CONSTITUTES.

Under an accident and health insurance policy issued to him, plaintiff was entitled to receive a certain amount per month for total disability and a less sum for partial disability. On being disabled, he notified the defendant company, which advised him that the policy was void by reason of the falsity of an alleged warranty in the application, and sent him a draft for the amount of the premiums paid by him. Plaintiff retained the draft, but did not use it. *Held*, that the draft not being sent to pay the claim for injuries, but to emphasize defendant's position that the contract was void and no liability existed, there was no accord and satisfaction releasing defendant from liability on the policy.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 1, Accord and Satisfaction, §§ 1–13.]

Appeal from Trial Term, Erie County.

Action by Cornelius Dineen against the General Accident Insurance Company of Philadelphia. From a judgment of the Supreme Court affirming a judgment in favor of plaintiff, defendant appeals. Affirmed.

Argued before McLENNAN, P. J., and SPRING, WILLIAMS, KRUSE and ROBSON, JJ.

Henry W. Pottle, for appellant.

Philip V. Fennelly, for respondent.

SPRING, J. In June, 1905, the defendant issued to the plaintiff an accident and health insurance policy, whereby it agreed to pay the plaintiff for total accident disability $40 per month and a less sum for partial disability. The plaintiff on April 10, 1906, fell on a defective sidewalk, fracturing his ankle and sustained other injuries, and has recovered a judgment on the policy by reason of these injuries, and their extent and the amount of the liability of the defendant are not involved if the policy was in force at the time of the disability. In his application the plaintiff agreed that the statements contained therein were warranties, among which were the following as they are embodied in the policy issued: The applicant agreed to report to the defendant if he took any other accident or health insurance. Then appeared these provisions:

"I have no accident or health insurance issued by stock companies, assessment or fraternal associations, except as follows: * * * No application ever made by me for insurance has ever been declined, and no accident or health policy issued to me has been canceled, or renewal refused, except as herein stated."

On November 15, 1904, the plaintiff had applied to the Prudential Insurance Company of America for a policy on his life, which, as de-

fendant claims, was rejected, and for that reason contends that the policy it issued to the plaintiff never had any vitality. There is no question in the application which specifically calls upon the plaintiff to disclose whether he has ever been rejected by a life insurance company. The general statement is made that no application for insurance had been declined. This statement follows the declaration that the applicant has no accident insurance, and precedes one in the same clause that no such policy has been canceled or renewal refused, and the plaintiff might well have inferred that the inquiries were directed solely to accident or health insurance. To analyze a little further the scope of the information sought to be obtained by the defendant, it first desired to know if the applicant carried any other accident or health insurance. It also wished to be informed if any accident or health policy had been canceled or refused. In parity with these inquiries, it desired to know if any application had ever been declined. No one would be expected to single out the last inquiry as extending to an application for a life policy. The subject-matter of all these inquiries to gain information was only accident or health insurance. An insurance company which is making every statement whether material or otherwise, a warranty, must be held to a very strict rule when it is endeavoring to avoid payment on its insurance contract because of answers to inquiries or declarations which it has framed. They must be so plain and intelligible that any applicant can readily comprehend them. If any ambiguity exists, the construction will obtain most favorable to the insured. Dilleber v. Home Life Ins. Co., 69 N. Y. 256, 262 et seq., 25 Am. Rep. 182; Robinson v. Supreme Commandery, 77 App. Div. 215, 218, 79 N. Y. Supp. 13, affirmed 177 N. Y. 564, 69 N. E. 1130. The defendant might easily have extended its statements to include the rejection by a life insurance company, and then the warranty, if false, might have avoided the policy. It cannot, however, by an uncertain phrase dependent upon an interpretation favorable to itself deprive the plaintiff of the benefit of a policy for which he has paid and honestly believed was in full force. Literally construed, if the plaintiff's application for a fire insurance policy had been declined, the policy in suit would be void from its inception.

While all the statements of the plaintiff are made warranties, it may not be out of place to refer briefly to the evidence of the alleged misstatement in his application. One Harris was the solicitor who obtained the application of the plaintiff for the life insurance policy. The application for the present policy was also procured by Harris. The Prudential Company rejected the application for the life policy on the ground that the applicant was afflicted with valvular disease of the heart, and notice of its rejection was sent to Harris, who informed the wife of the plaintiff that the application had been postponed, and in three months he would "reopen the case." The plaintiff never knew that his application had been declined. There was no intended falsity in the statement that he made. Harris, who supervised these answers, never suggested that the general declaration—no application for insurance had been declined—might comprehend the application for life insurance. It is fair to assume that even the agent or broker never understood that it is so sweeping in its im-

port as is now claimed. Within 10 days after he was injured the plaintiff notified the defendant of his accident and injuries. By the terms of the policy, affirmative proof of the injury must be furnished the company within 30 days "of the termination of the disability." The plaintiff was "totally disabled" for three months, and for some time after that was "partially disabled." July 17, 1906, and before the plaintiff's cause of action had accrued, the defendant sent a draft to him for $17, the amount of the premiums which he had paid, and advised him the policy was void by reason of the falsity of the alleged warranty already adverted to. Later the plaintiff sent a check for $1 in payment of his premium, which the defendant also returned. The plaintiff retained both the draft and check, and tendered them to the defendant on the trial. The defendant claims that the sending of the draft and its retention by the plaintiff were a satisfaction and settlement of the claim. There was no disputed demand. The plaintiff's claim had not yet matured, and the amount to which he would be entitled eventually was not then ascertainable. The defendant was not attempting to compromise a disputed claim, but was repudiating its contract. The draft it sent was not to pay the plaintiff's claim for injuries. It was sent to emphasize its position that the contract was void and no liability existed. The draft was not used, and there was no accord and satisfaction. Laroe v. Sugar Loaf Dairy Co., 180 N. Y. 367, 73 N. E. 61; Eames Vacuum Brake Co. v. Prosser, 157 N. Y. 289, 51 N. E. 986; Bowery Bay Bldg. Co. v. Rossiter, MacGovern Co. & Co., 113 App. Div. 652, 99 N. Y. Supp. 922.

The judgment should be affirmed, with costs.

Judgment affirmed, with costs. All concur.