ELLEN A. WRIGHT

*vs.*

THE FRATERNITIES HEALTH AND ACCIDENT ASSOCIATION.

Penobscot.   Opinion December 21, 1910.

*Insurance.   Application.   Construction.*

Where language, liable to be misunderstood, is employed in the application prepared by an insurance company, all doubts must be resolved in favor of insured.

The insured applied for insurance in a "health and accident association." There was nothing in the application calculated to call attention to life insurance, all the questions relating to the health of the applicant.   *Held,* that the question in such application, "Has any company, society or association ever rejected your application, canceled your policy or declined to renew same or refused compensation for disability?" should be construed to mean previous applications for health and accident insurance alone, in an action on the policy so as to prevent a forfeiture on the ground that applicant had answered the question in the negative, though his application for life insurance had previously been rejected by a life insurance company.

On report.  Judgment for plaintiff.

Assumpsit brought by the plaintiff as beneficiary of Henry A. Wright to recover the sum of $324.50 as sick benefits under a policy of health and accident insurance issued to the said Henry A. Wright by the defendant company.  Plea, the general issue with brief statement as follows:  "That by the terms of the contract in suit, if any of the statements, representations, or answers made in the application for said contract were not true, full and complete, all rights to benefits thereunder were null and void; and the defendant says that the answers to the first, second, third and· eighth questions contained in the application for said contract were not true, full and complete."  At the close of the evidence the case was reported to the Law Court for determination.

The case is stated in the opinion.

*Matthew Laughlin*, for plaintiff.

*Harry Manser*, for defendant.

SITTING:  SAVAGE, SPEAR, CORNISH, KING, JJ.

EMERY, C. J., WHITEHOUSE, PEABODY, JJ., dissenting.

KING, J.  The plaintiff was named beneficiary in an accident and health insurance policy issued by the defendant company to her husband, Henry A. Wright, upon his written application and statements.  In the application Mr. Wright made answers to various interrogatories therein propounded as to the then present and past condition of his health, and he also stipulated "That if any of the statements, representations, or answers made herein are not true, full and complete, all rights to the benefits named in my policy shall be null and void, and all money paid by me to the Association forfeited."

The interrogatories and answers were as follows:

1.  Q.  Are you now in good health?  A.  Yes.

2.  Q.  Have you been in good health for the last five years?  A.  Yes.

3.  Q.  Have you consulted, been prescribed for or required the services of a physician or surgeon during the past five years?

If so, give date and state particulars, name and address of attending physician? A. No.

Q. Have you had fits, vertigo, paralysis, varicose veins, asthma, rheumatism, sciatica, lumbago, cancer, nervous prostration, appendicitis, cystitis, gall stones, gravel, or is your hearing or eyesight impaired? A. No.

5. Q. Have you ever had a rupture or suffered the loss of an eye, hand or foot, or use of either? A. No.

6. Q. Have any of your near relatives died of or been afflicted with consumption, paralysis, insanity, scrofula, cancer, or any hereditary disease? A. No.

7. Have you always been and are you now of sober and temperate habits? A. Yes.

8. Q. Has any Company, Society or Association ever rejected your application, cancelled your policy, or declined to renew same, or refused compensation for disability? If so, give name and date. A. No.

9. Are you insured in any other Company, Society, or Association paying sick and accident benefits? If so, give name and amount of benefit in each. A. No.

The application, including the interrogatories, answers and stipulation constituted, with the policy itself, the contract of insurance. Mr. Wright was ill and died of disease within the terms of the policy, and the beneficiary brings this suit on the contract.

It appears from the evidence that Mr. Wright previous to his application to the defendant company had made written application through an accredited Agent of the North Western Mutual Life Insurance Company for a policy of insurance upon his life and the application was rejected. The main question in the case is whether the fact of such application and rejection is in contravention of Mr. Wright's unconditional negative answer to the eighth interrogatory in his application to the defendant company.

The plaintiff claims that the interrogatory does not call for an answer as to applications to a life insurance company for a life insurance policy, but is limited to applications to Health and Accident Insurance Companies for health insurance policies. The

defendant claims that the interrogatory is more comprehensive and does call for an answer as to applications to life insurance companies as well.

The subject matter under consideration was health and accident insurance.   A conspicuous feature of the application is the name of the company, The Fraternities Health and Accident Association. Life insurance is not mentioned.   It was not under consideration. There is nothing in the application calculated to call attention to it.   No reason can readily be conceived why a person of ordinary prudence and intelligence should think of it by way of association from any statement contained in the application.   Interrogatory 8 reads:  "Has any company, society or association ever rejected your application," etc. ?   When the phraseology of this question is construed in connection with the subject matter of the contract it seems evident that the ordinarily prudent person would be authorized to imply the word "health" before the word "company" so that the question would mean, in the mind of the applicant— Has any Health company, etc., rejected your application, etc.

The defendant, however, claims that the language of interrogatory 8 should be interpreted in its most comprehensive sense ; that the word "any" should be interpreted to include life insurance, and all other corporations doing a life, health or accident insurance business. But we think there can be little doubt that interrogatory 8 was susceptible of the limited interpretation above given, and warranted the assumed understanding of the question disclosed by the answer. In the employment of language so liable to be misunderstood, as that used in giving expression to interrogatory 8, it seems well settled that all doubts must be resolved in favor of the assured. In other words it is incumbent upon the company which prepares the form of application, containing declarations to be made and questions to be answered,  to use language so plain and intelligible that the ordinary person, under the usual circumstances of filling out applications, can readily comprehend it.

In *Wallace* v. *Ins. Co.,* 41 Md. 744, 22 L. R. A., N. S., 966, it is said :  "If the words employed, of themselves, or in connection with other language used in the instrument, or in reference to the

subject matter to which they relate, are susceptible of the interpretation given them by the insured, the policy will be construed in favor of the assured. As the insurance company prepares the contract and embodies in it such conditions as it deems proper, it is in duty bound to use language so plain and clear that the insured cannot mistake or be misled as to the burdens and duties thereby imposed upon him."

In *Manufacturers' Accident Indemnity Co.* v. *Dorgan*, 58 Fed. Rep. 945, Judge Taft states the rule as follows : "It is a well-settled rule in the construction of insurance policies of this character, which the insured accepts for the purpose of covering all accidents, to construe all language used to limit the liability of the company, strongly against the company. Policies are drawn by the legal advisers of the company, who study with care the decisions of the courts, and, with those in mind, attempt to limit as narrowly as possible the scope of the insurance. It is only a fair rule, therefore, which courts have adopted, to resolve any doubt or ambiguity in favor of the insured and against the insurer." See also cases cited.

*Dineen* v. *General Accident Insurance Company*, 126, Appellate Division, 167 (N. Y.) 110 N. Y. Supp. 344, is a case practically identical in facts with the case at bar. In the application the assured said in answer to a question : "No application ever made by me for insurance has ever been declined," etc. It appears that prior to the date of this answer the plaintiff had applied for a policy on his life which had been refused. The court however say : "There is no question in the application which specifically calls upon the plaintiff to disclose whether he has ever been rejected by a life insurance company." In construing the question with reference to the context, the court also say : "The plaintiff might well have inferred that the inquiries were directed solely to accident or health insurance." It should be observed also that all the statements of the plaintiff were made warranties. It is said in the opinion last referred to, in construing the application : " An insurance company which is making every statement, whether material or otherwise, a warranty must be held to a very strict rule when it is endeavoring

to avoid payment on its insurance contract, because of answers to inquiries or declarations which it has framed.  They must be so plain and intelligible that any applicant can readily comprehend them.   If any ambiguity exists the construction will obtain most favorable to the insured."   Under these decisions it seems clear that it was not incumbent upon the plaintiff to maintain, that the question could not be construed to include life companies, but that it was enough for her to show that it was susceptible of the construction given by the applicant,— that life insurance companies were not embraced in it.   If the defendant intended to include life companies it should have left no doubt as to its meaning.   A single word would have accomplished the result.

> *Judgment for the plaintiff for $324.50 and*
> *interest to be added from the date of the writ.*


Dissenting opinion by EMERY, C. J., WHITEHOUSE and PEABODY, JJ., concurring.

EMERY, C. J.   We cannot concur.   We see no reason for construing the contract strictly against one party and liberally in favor of the other.   The parties were upon equal footing ; neither should be favored or penalized.   The contract was mutual and entered into voluntarily without constraint upon either party.   It should receive the construction its language fairly imports, read in the light of the purpose of the parties and of the contract itself.   The assured applied for insurance upon his health.   The insurance company desired from him information, and sources of information, as to his health, present and past.   Such was the obvious purpose of the questions asked of him.   He must be held to have known that such was their purpose,—that his condition and history as to health would determine whether the company would assume the risk.

To enable it to ascertain whether there was any reason why it should not assume the risk, the company propounded to him question 8.   "Has any Company, society or association ever rejected your application, cancelled your policy, or declined to renew the same,

or refused compensation for disability." The applicant answered "No," although he had applied to, and been rejected, by a life insurance company because of ill health ; and he then stipulated that if any of the statements, representations, or answers were "not true, full and complete, all rights to the benefits named in my policy shall be null and void and all money paid by me to the association forfeited." His stipulation was, not that his answers should be true according to his knowledge or belief, or recollection, or even according to his understanding of the questions, but that the answers would prove to be "fully and completely" true in fact.

Undoubtedly the company might have framed their questions differently. Also it may be that the answer to Question 8 was not wilfully false. The applicant may have forgotten, or answered as he did inadvertently. All this, however, is beside the real question, which is, taking the question and answer as they were framed, was the answer in fact "true, full and complete?" Inasmuch as life insurance companies, usually at least, accept or reject applications according to the applicant's state of health, and inasmuch as this applicant had applied for a policy in a life insurance company and had been rejected because of ill health, we think it clear the answer was not "true, full and complete." If the applicant, assuming him to have been honest, had remembered the fact of his former application and rejection he would not have answered as he did. No honest man would.