## BOWLES v. MUTUAL BEN. HEALTH & ACCIDENT ASS'N.

### No. 4274.

Circuit Court of Appeals, Fourth Circuit.

Oct. 4, 1938.

Before PARKER and NORTHCOTT, Circuit Judges, and CHESNUT, District Judge.

PARKER, Circuit Judge.

This is an appeal by plaintiff from an adverse judgment in an action on a health and accident insurance policy. The policy was issued February 22, 1932 and insured the plaintiff, a physician specializing in eye, ear, nose and throat work, against loss of life, limb, sight or time resulting from bodily injuries sustained through purely accidental means. On June 22, 1932, while the policy was in force a foreign body struck and broke the windshield of an automobile that plaintiff was operating, causing glass or some other substance to penetrate his right eye, destroying all useful vision in that eye and resulting in such injury to the left eye that plaintiff has become totally disabled from engaging in any occupation. Liability under the policy was denied on the ground: (1) That plaintiff in applying for the policy had misrepresented his average monthly earnings in replying to a question contained in the application; (2) that plaintiff had falsely represented in the application that he had no other application for insurance pending at that time; and (3) that plaintiff had failed to disclose in accordance with the requirements of the policy the obtaining of additional insurance, two policies from the Equitable Life Insurance Co. of Iowa on February 23, 1932, one from the Metropolitan Ins. Co. on March 4, 1932, and one from the Commercial Casualty Insurance Co. on June 18, 1932.

The case was heard by the judge below on an agreed statement of facts; and he found with plaintiff on the first and second of the contentions of defendant above stated, but held that the policy was avoided by reason of the failure of the plaintiff to notify defendant of the issuance of the Equitable and Commercial Casualty policies. As to the Metropolitan policy, he held that the acceptance by the defendant of premium on the policy in suit with knowledge of the existence of the Metropolitan policy constituted a waiver of the requirement of notice with regard thereto.

We think that the judge was unquestionably correct in holding with plaintiff on the first point. The inquiry in the application was, "What are your average monthly

Frank W. Rogers, of Roanoke, Va. (A. R. Bowles, Jr., of Richmond, Va., and Woods, Chitwood, Coxe, Rogers & Muse, of Roanoke, Va., on the brief), for appellant.

Randolph G. Whittle and Martin P. Burks, III, both of Roanoke, Va. (Funkhouser & Whittle, of Roanoke, Va., on the brief), for appellee.

earnings?" The answer was "$1,000." It is stipulated that during the year 1931 plaintiff's fees as charged amounted to $14,000; that he collected $8,991.75 and that he returned net income after payment of office expenses including use of automobile of $5,374. We agree with the trial judge that, if the company was inquiring as to net income it should have framed its question accordingly; but we do not find it necessary to decide whether under the circumstances of the case the answer could be considered a substantially false representation. That the company did not so regard it is shown by the fact that it accepted the September premium on the policy although it had been informed in the first accident report on June 28th that plaintiff's total collections for the preceding year were only $8,991.75. If it could be held that there was a material misrepresentation with respect to this matter, it was waived when premium on the policy was accepted with knowledge of the facts. Phoenix Mut. Life Ins. Co. v. Raddin, 120 U.S. 183, 7 S.Ct. 500, 30 L.Ed. 644; New York Life Ins. Co. v. Dumler, 5 Cir., 282 F. 969; Aetna Life Ins. Co. v. Frierson, 6 Cir., 114 F. 56, 63; Virginia Fire & M. Ins. Co. v. Lennon, 140 Va. 766, 125 S.E. 801, 38 A.L.R. 186; Foreman v. German Alliance Ins. Ass'n, 104 Va. 694, 52 S.E. 337, 3 L.R.A.,N.S., 444, 113 Am. St.Rep. 1071; 14 R.C.L. 1190; 32 C.J. 1348.

On the contention with respect to pending applications for insurance, it appears that insured simply failed to answer a question in the application addressed to this subject, and that the company issued the policy sued on without requiring that it be answered. Under such circumstances, the fact that insured had an application for other insurance pending at the time is immaterial. By issuing the policy without requiring an answer to the question, the company waived answer to the inquiry and elected to treat it as immaterial. Phoenix Mut. Life Ins. Co. v. Raddin, supra.

Likewise as to the failure to notify the company with regard to taking out the Metropolitan policy. Since the company was notified of the existence of this policy on July 6th or 8th, and since it accepted from the plaintiff a renewal premium on the policy in suit on September 1st following, it clearly waived any breach of condition so far as notice of this policy

was concerned. Couch, Encyclopedia of Ins. Law, vol. 5, sec. 1065; Phoenix Mut. Life Ins. Co. v. Raddin, supra.

In the view which we take of the case, therefore, it is narrowed to two questions: (1) Whether the policies issued by the Equitable Life Insurance Co. of Iowa constituted "additional insurance" within the meaning of clause 18 of the policy in suit requiring notice to defendant; and (2) whether failure to give notice of the obtaining of the accident and health policy from the Commercial Casualty Ins. Co., which was accepted four days before the accident, resulted in avoiding the policy. The facts out of which these questions arise are as follows:

The policy in suit is a simple accident and health policy, providing an indemnity of $5,000 for loss of life or loss of both eyes, both hands, both feet or one hand and one foot, an indemnity of $1,500 for loss of one hand, one foot or one eye, a total disability benefit of $150 per month from date of accident, a partial disability benefit of $60 per month for a period of three months and for medical expense of not exceeding $37.50 in non-disabling injuries. It contains a provision that strict compliance with all the provisions and agreements of the policy is a condition precedent to recovery, and requires notice of additional insurance under the following provision:

"18. Do you hereby apply to the Mutual Benefit Health & Accident Association for a policy to be based upon the foregoing statements of facts, and do you understand and agree that the falsity of any statement in this application shall bar the right to recover if such false statement is made with intent to deceive or materially affects either the acceptance of the risk or the hazard assumed by the Association, and do you agree to notify the Association promptly of any change in your occupation, or if you take additional insurance, and do you hereby authorize any physician or other person who has intended or may attend you to disclose any information thus acquired?"

The policy provided for renewal upon payment in advance of quarterly premiums and, through a "non-cancellable endorsement", provided against cancellation during any current quarterly term.

At the time that plaintiff applied for this policy he had recently gone through

bankruptcy and was renewing his insurance coverage. He had an application pending with the Equitable Life Insurance Company of Iowa for two life insurance policies aggregating $15,000, which were issued February 12, 1932 and became effective February 23d, one day after the issuance of the policy sued on but a few days prior to its acceptance by plaintiff. They provided double indemnity in case of accidental death and contained provisions for the payment of $150 per month to the insured in case of total and permanent disability. No notice was given defendant by plaintiff of the taking of this insurance, and defendant did not learn of it until some time after the renewal of the policy in suit by the payment and acceptance of quarterly premiums on June 1st and September 1st. It is stipulated that the defendant understood the term "additional insurance" as used in the quoted portion of the application to include life policies containing disability provisions, but that there was a difference of opinion among insurance men generally with respect to the matter, the fact as stipulated with respect to this difference of opinion being as follows:

"There is a difference of opinion among insurance men generally as to whether disability insurance such as provided by the riders attached to the plaintiff's Equitable Life policies should be considered embraced within the meaning of the term 'accident or health insurance'. Some companies do and some companies do not count it in determining the amount of sickness or accident indemnity they will write for an applicant. Some companies ask in their application blanks specific questions as to whether the applicant has life insurance with disability benefits and the amount thereof."

In May 1932 plaintiff applied to the Commercial Casualty Company for an accident and health policy. This policy was delivered to plaintiff for examination on May 28th and it was accepted by him and the premium paid on June 18th. It appears that prior to accepting this policy and paying the premium on it, plaintiff intended to accept it and to drop the policy in suit. But the stipulation states that as a matter of fact the quarterly premium was paid on the policy in suit on June 1, 1932 and the plaintiff accepted the Commercial Casualty policy which had been left with him for examination and paid the premium on it on June 18th. Defendant learned of the existence of the Commercial Casualty policy on September 8, 1932 through an accident report made by plaintiff. Notwithstanding this knowledge, defendant wrote plaintiff on October 20th that his claim was being investigated, and not until October 31st did it deny liability under the policy and tender return of the premium collected on September 1st.

When the policy in suit is construed, as it must be, in the light most favorable to the insured, it is clear that notice of the Equitable policies was not required under it. The requirement that the defendant be notified of the taking of additional insurance had reference to the kind of insurance covered by the policy, i. e. accident or health insurance. And, in view of the difference of opinion among insurance men as to whether life insurance carrying double indemnity and disability features should be considered as embraced within accident or health insurance in determining the amount of sickness or accident indemnity, we cannot hold as a matter of law that it is so embraced. The fact that defendant so considered it is immaterial. The policy must be construed, not in the light of defendant's understanding, but in the light of the interpretation which others might place on it in view of the usages of the insurance business and under the rule that any ambiguity must be resolved against the company.

It is clear that there is a real difference between a life policy with double indemnity and disability benefits and an accident and health policy, such as we have here, providing for death benefits. The dominant purpose of the two kinds of policies is entirely different, the risks which they cover overlap in only a small segment, and it would not occur to the ordinary man that one was additional insurance of the sort covered by the other. When, in addition to this, those skilled in insurance are in disagreement as to whether life insurance with double indemnity and disability features should be counted as additional health or accident insurance, language of a life and accident policy requiring disclosure of additional insurance of such character cannot be held to embrace life insurance policies with double indemnity and disability features without doing violence to the well settled rule of construction to which we have referred.

A case very much in point is Mutual Reserve Life Ins. Co. v. Dobler, 9 Cir., 137 F. 550. In that case the question was whether in an application for a life insurance policy the applicant was required, under a general inquiry as to other insurance, to disclose the existence of an accident policy providing for death benefits. The court, speaking through the late Judge Gilbert, said (page 553):

"In the ordinary understanding and usage there is a well-defined distinction between life insurance and accident insurance. In the latter the contract is to pay a fixed sum in case of death resulting from external, violent, and accidental means, and ordinarily for the payment of a fixed sum periodically during incapacity caused by accidental injury. The policy covers a short period of time, ordinarily not longer than a year. Generally no inquiry is made as to the age or health of the applicant, and the liability is often restricted to injury resulting from accidents of a particular nature, or accidents pertaining to a particular occupation, or accidents occurring while the insured is traveling by public conveyance. * * * Life insurance companies, on the other hand, insure the payment of a fixed sum upon the occurrence of the inevitable event of death. They make careful inquiry as to the age, health, and personal history of the applicant. It may be material to them to know whether the risk has been accepted or refused by other insurance companies. The distinction has been recognized by the courts, and it has been held that legislation referring to life insurance and life insurance companies does not include within its scope accident insurance and accident insurance companies. Fidelity & Casualty Co. v. Dorough, 107 F. 389, 46 C.C.A. 364; Ticktin v. Fidelity & Casualty Co. of New York, C.C., 87 F. 543. * * *

"But it is not necessary to rest the decision of this branch of the case upon the recognized distinction between life and accident insurance. In any view of the case, we think that the most that can be claimed in behalf of the plaintiff in error for the questions so propounded to the applicant was that they were so worded as to leave it uncertain whether they called for a disclosure of the accident insurance which he carried at that time. If the insurance company in its printed application employed ambiguous terms or words of doubtful import, it cannot complain if they were construed as they were by the applicant, or if the agent so advised him as to their meaning."

Arneberg v. Continental Casualty Co., 178 Wis. 428, 190 N.W. 97, 29 A.L.R. 93, was a suit for death benefits under an accident insurance policy which provided that, if the insured should carry "other insurance covering the same loss" without giving written notice to the company, the company should be liable only for such portion of the indemnity promised as the indemnity should bear to "the total amount of like indemnity in all policies covering such loss" [page 100]. The insured procured a policy in another company providing for payment in case of death "by accident or otherwise" and no notice thereof was given the accident company. In holding that an amendment for the purpose of pleading the other insurance was properly denied, since such insurance was not within the language of the proration clause, the court said:

"While both policies furnished indemnity in case of accidental death, they were not alike in any other provision. The Northwestern Mutual life insurance policy provided indemnity in case of death from whatever cause. This of course included death by accident. It is well understood that death benefits are not the dominant feature of an accident insurance policy. The dominant feature of that kind of a policy is indemnity for loss of time resulting from accident. These two policies overlap only in the one contingency—accidental death. In no other respect are they alike and in no other respect did they cover the same loss. That the defendant company had in mind insurance similar to that covered by its own policy is indicated by questions propounded by the application, where the insured was required to state whether he had any insurance against accident or sickness in other companies or associations, and whether he had any accident or sickness insurance in this company. We think these questions indicate that the company considered it material whether the applicant was carrying other insurance against accidents or sickness, and that it intended to provide that in case the insured carried other insurance against accident or sickness then it would be liable only for its proportion of the indemnity. The applicant was required to state in his application that he at that time had no

such insurance, and in the policy it was provided that, if at any future time the insured should procure such insurance without giving written notice to the company, the company would be liable only for its pro rata proportion of the indemnity promised. It is plain to our minds that these policies did not cover the same loss within the meaning of the provision of defendant's policy, and that the court properly denied the motion to permit the amendment."

Julius v. Metropolitan Life Ins. Co., 299 Ill. 343, 132 N.E. 435, 17 A.L.R. 956, was a suit upon a life insurance policy which provided for deduction from the face of the policy of amounts payable under other policies. Contention was made that the death benefit paid under an accident policy should be deducted under this provision. In denying this contention the Court said [page 437]:

"In common parlance we do not refer to accident or health insurance as life insurance. When the parties to this contract agreed to the terms in the contract, they were dealing in life insurance, and we must assume that no other kind of insurance was mentioned or considered. If there is any ambiguity in an insurance policy, it is the fault of the insurance company. It prepares the contract, and the language used in the contract is its language. If that language is susceptible of two interpretations, that one will be adopted which is most favorable to the insured in order to indemnify him for the loss he has sustained. The amount of an accident policy may or may not be payable at death. According to the stipulation filed the accident policy held by insured provided that the beneficiary would be paid the amount of the policy for 'death resulting only directly, and independently of all other causes, from bodily injuries sustained through external, violent, and accidental means, if such death results from such bodily injuries within ninety days from such accident.' To the extent that this policy provided payment in the event of death by accident it provided for life insurance, but that does not bring it within the term 'life insurance' as it is generally used, nor as it is used throughout our statute on insurance."

In Provident Life & Accident Ins. Co. v. Rimmer, 157 Tenn. 597, 12 S.W.2d 365, a suit on a policy of accident insurance,

one question was whether failure to characterize as accident insurance a life policy providing double indemnity in case of accidental death did not constitute a false answer as to what accident or health insurance applicant was carrying in other companies. In holding that it did not, the court said [page 367]:

"The policy in the Equitable Life Assurance Society covered loss of life from natural as well as external and accidental causes, and was life insurance. The mere addition of the double indemnity clause providing for increased insurance upon proof of death by accident did not divest the policy of its character of insurance on life, or make the contract other than life insurance, for insurance on life includes all policies of insurance in which the payment of the insurance money is contingent upon the loss of life."

Another question which arose in the same case was whether this double indemnity feature should be treated as accident insurance under a proration clause contained in the policy in suit. In answering this question in the negative the court said:

"The defendant insists that to the extent of the additional insurance made payable upon proof of death by accident that the insurance in the Equitable & Michigan Mutual Life Insurance Company was accident insurance, and if the accident policy in defendant company is enforceable at all its obligation under the policy is limited to a settlement on the basis provided for in paragraph 17. * * *

"The insurance in the Equitable Life Assurance Society and the Michigan Mutual Life Insurance Company, which defendant insists should be taken into account in determining its liability, was life insurance, and this provision of the policy imposed no obligation upon the insured to give notice of its existence."

To the same effect is the holding in International Travelers' Association v. Gunther, Tex.Civ.App., 269 S.W. 507. And in Wright v. Fraternities Health & Accident Association, 107 Me. 418, 78 A. 475, 32 L.R.A.,N.S., 461, and Dineen v. General Accident Ins. Co., 126 App.Div. 167, 110 N.Y.S. 344, it was held that questions in applications for accident and health insurance as to rejection by other companies should not be held to include

rejections by life insurance companies, on the ground that the applicant might well have inferred that the inquiries were directed solely to accident and health insurance and that all doubts must be resolved in favor of the assured. The question seems not to have been before the Supreme Court of Appeals of Virginia; but that court in Standard Accident Ins. Co. v. Walker, 127 Va. 140, 102 S.E. 585, held that an accident insurance policy was not avoided by an answer as to other insurance in stock companies, assessment or fraternal associations which failed to disclose that applicant was entitled to weekly sick benefits by reason of membership in a social club, the court saying [page 587]: "It may well be doubted whether his membership in such an organization would ever occur to the average man who was asked to state what policies he held providing for accident or sickness insurance issued by stock companies, assessment or fraternal associations." On like principle, we think it would never occur to the average man to report as accident and health insurance an ordinary life policy with special provisions for total disability and for double indemnity in case of accidental death.

The case of Gilbert v. Inter-Ocean Casualty Co., 41 N.M. 463, 71 P.2d 56, is distinguishable from the case at bar in that there was no evidence there corresponding to that introduced by stipulation here as to the difference in custom among insurance men with respect to counting the double indemnity and disability features of life policies as health and accident insurance. It is to be noted, also, that there is a dissenting opinion in that case which seems more in accord with the weight of authority than does the opinion of the court.

We conclude, therefore, that, whether the double indemnity and disability features of a life insurance policy should otherwise be construed as being within the requirement of notice of other insurance contained in an accident and health policy or not, the stipulation as to the understanding of insurance men and the custom of insurance companies shows that there is a real ambiguity in the language as used in the policy sued on; and resolving that ambiguity, as we must, in favor of the insured, we hold that the language has no reference to life policies containing double indemnity and disability features, and that the policy was not avoided by reason of failure to give notice of the Equitable policies.

There can be no question but that the Commercial Casualty policy falls within the language of the policy requiring notice as it was a health and accident policy; and insured was bound to give the company notice of it promptly. "Promptly" in this connection, however, means with reasonable diligence (50 C.J. 719) having regard to the purpose for which the notice could be used. Mellen v. Hamilton Fire Ins. Co., 17 N.Y. 609; Satterfield v. Inter-Ocean Casualty Co., 159 Tenn. 531, 19 S.W.2d 229; Aaberg v. Minnesota Commercial Men's Ass'n, 161 Minn. 384, 201 N.W. 626; Homestead Fire Ins. Co. v. Ison, 110 Va. 18, 65 S.E. 463, 466. And since the company could have taken no action to cancel the policy until the expiration of the period for which premium had been paid, and since this period would not have expired until September 1st, we think it clear that the insured cannot be said to have delayed beyond the period which reasonable diligence required in not giving notice prior to June 22d of a policy which had become effective only four days before, or on June 18th. The policy was unquestionably in effect on June 22d, therefore, when plaintiff's injury was received, and his rights are to be determined as of that date.

It is argued that any question with respect to the Commercial Casualty policy was waived because of the fact that defendant learned of the existence of this policy on September 8th and did not offer until October 31st to return the premium which it had received on September 1st, but on the contrary wrote plaintiff on October 20th that his claim was being investigated. There is much force in this contention; for the case is not one like Fountain & Herrington v. Mutual Life Ins. Co., 4 Cir., 55 F.2d 120, where the delay was justified by the inquiry being made into the facts. Here, the insured himself disclosed the existence of the Commercial Casualty policy and there was nothing further to investigate if forfeiture was to be claimed on that ground. If forfeiture was to be claimed, however, it was required that it be claimed promptly and the unearned portion of the premium

be returned, since as said by Judge Donahue in Hanover Fire Ins. Co. v. Dallavo, 6 Cir., 274 F. 258, 264, "The retention of that unearned premium with full knowledge of the facts was and is equivalent to the acceptance of payment, day by day, during the time it retained such unearned premiums, which premiums it was entitled to retain only upon the theory that the policies were valid." We need not decide this point, however, as we are satisfied that the policy had not been avoided at the time of the accident.

For the reasons stated, the judgment appealed from will be reversed and the case will be remanded for further proceedings not inconsistent herewith.

Reversed.